USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/16/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY HOUSE,

Plaintiff,

-against-

No. 10 Civ. 9476 (CM) (FM)

WACKENHUT SERVICES, INC.,
LT. RENATO VELATI, OFFICER CARBONARO[1],
JANET NAPOLITANO (SECRETARY OF
HOMELAND SECURITY),

Defendants.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART WACKENHUT SERVICES, INC.'S, LT. RENATO VELATI'S, AND OFFICER JAMES CARBONARO'S MOTION TO DISMISS**

McMahon, J.:

## I. INTRODUCTION

Plaintiff Jeffrey House ("plaintiff" or "House") sued defendants Wackenhut Services, Inc. ("Wackenhut"), Lt. Renato Velati ("Velati"), Officer James Carbonaro ("Carbonaro") (collectively, the "Wackenhut defendants") and Janet Napolitano, United States Secretary of Homeland Secretary (collectively, the "defendants"), for wrongful termination, intentional infliction of emotional distress ("IIED"), defamation, and breach of contract, following his termination from Wackenhut, where he had been employed as a security officer.

On July 15, 2011, the Wackenhut defendants moved to dismiss House's IIED, defamation, and breach of contract claims primarily on the ground that they are preempted by § 301(a) of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185(a) (2006). In the alternative, the Wackenhut defendants request that the court "enter [partial

[1] The Amended Complaint (ECF Dkt. No. 19) lists an "Officer Carbanaro" as a defendant. Carbonaro's counsel has advised the Court of Carbonaro's full name (as well as its correct spelling).

summary] judgment as to those counts" in their favor. (MOL in Supp. of Mot. to Dismiss at 2.) To that end, they have attached a Rule 56.1 statement to their motion; however, there is no reason to analyze the motion under a summary judgment standard.

House, who is represented by counsel, has failed to oppose the motion in the five months since it was filed.

For the following reasons, the Wackenhut defendants' motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

House is a sixty-year old, African American male who was employed as a security guard by Wackenhut and Federal Protective Services[2] beginning approximately fifteen years ago. (Am. Compl. ¶¶7-8.) House alleges that Wackenhut and Federal Protective Services "control the security at 201 Varrick [sic] Street, and work as a single integrated enterprise for this purpose," and that Janet Napolitano, as Secretary of the Department of Homeland Security, heads Federal Protective Services. (Id. ¶10.) The relationship between Wackenhut and Federal Protective Services is far from clear, but as there has been no motion on the part of Janet Napolitano, the relationship is irrelevant for the purposes of this motion.

In addition to his role as a security guard, House was also on the negotiating team of the Local One Security Officer's Union. (Id. ¶12.) As a member of that team, he handled negotiations for a collective bargaining agreement ("CBA") with Wackenhut. (Id.) House alleges that the CBA was not ratified at the time of his termination. (Id.)

---

2 Federal Protective Services was listed as a defendant in the caption of the original Complaint (ECF Dkt. No. 1), but has been removed from the caption of the Amended Complaint. It is not clear whether House and his counsel have decided to discontinue the action as against Federal Protective Services, as there are a number of other defendants who have been dropped from the caption of the Amended Complaint, as well, including the United States of America, Alfredo Clarke, and Rafael Boe. See also infra note 3.

At some point in August 2009, House alleges that the defendants began to "methodically weed out" elderly security officers by filing frivolous complaints against them and by destroying "tape recorded evidence" that exonerated them. (Id. ¶13.) On December 28, 2009, Velati and Wackenhut accused House of sleeping while on duty, in violation of Article 404.25 of unspecified "rules and regulations." (Id. ¶15.) At an unspecified point thereafter, Carbonaro, Project Manager for Wackenhut, allegedly "went along with [Wackenhut's] scheme to wrongfully and maliciously terminate plaintiff's employment" even though he was aware that House was innocent. (Id. ¶16.) Finally, Federal Protective Officer Boe[3] ordered that House be forbidden from returning to work and removed him from active duty. (Id. ¶17.)

House alleges that he demanded to be shown the video evidence of his misconduct, but that the defendants either destroyed or concealed the evidence from him. (Id. ¶19.) He avers that the charge of "sleeping on the job" and his termination were discriminatory actions taken because of his age and race[4] (id. ¶24), and that this statement constitutes actionable defamation. (Id. ¶45.) Furthermore, House alleges that he was promised that he could work in an environment free of race and age discrimination, and that that promise was memorialized in Wackenhut's employee handbook, which he alleges constituted an employment contract. (Id. ¶52.)

---

[3] Boe is not listed as a defendant in the caption of the Amended Complaint, although he is referred to as "defendant Boe" in paragraph 45. Boe was a named defendant in the original Complaint (ECF Dkt. No. 1). The Wackenhut defendants do not purport to move on his behalf, and it is completely unclear as to whether plaintiff and his counsel have discontinued the action as against Boe.

[4] The Amended Complaint is inconsistent in its treatment of House's discrimination claims. At some points, it is couched strictly in age discrimination: "his termination was aimed solely at retaliating against plaintiff because of his age" (Am. Compl. ¶19); "Carbanaro [sic] . . . went along with [Wackenhut's scheme to] terminate plaintiff's employment because of his age" (id. ¶16). At other points, it purports to raise race discrimination claims: "maliciously terminated plainitff's [sic] employment because of his age and race" (id. ¶18), "Defendants' harassment of plaintiff . . . due to his age and race" (id. ¶24).

House's Amended Complaint raises four counts against the defendants. Count I alleges "wrongful termination" in violation of Title VII of the Civil Rights Act of 1964, New York Executive Law § 296 and New York Civil Rights Law § 40-c. However, Count I is really a hybrid of distinct legal theories—or perhaps more accurately, an amalgam of legal "buzz words"—under those statutes, including disparate treatment, hostile work environment, and retaliation, and is asserted against all defendants. Count II raises an IIED claim against the Wackenhut defendants, based on their "outrageous" conduct in making false allegations against him of "sleeping on the job" in order to establish a pretextual reason for his termination. Count III purports to state a defamation claim against the Wackenhut defendants, based on the allegedly false statement that House was caught asleep while on duty. Finally, Count V[5] asserts a claim for breach of contract, and is seemingly asserted against all defendants.

The Wackenhut defendants have moved to dismiss Counts II, III, and V, principally on the ground that they are preempted by § 301 of the LMRA. No motion has been made with regard to Count I. Defendants also argue that House's IIED and contract claims fail to state causes of action.

## III. DISCUSSION

### A. Standard of Review on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss under Rule 12(b)(6) . . . a complaint must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." Mabry v. Neighborhood Defender Service, 769 F. Supp. 2d 381, 389 (S.D.N.Y. 2011) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

[5] The Amended Complaint contains no Count IV.

(2009)). "[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-50.

Failure to oppose a motion to dismiss does not automatically justify dismissal. See Haas v. Commerce Bank, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007). "In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency . . . . Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" Id. (quoting McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000)).

**B. Consideration of Matter Outside the Pleadings**

Generally, "'If, on a motion under 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56' and '[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'" Madu, Edozie, & Madu P.C. v. Socketworks Ltd. Nigeria, 265 F.R.D. 106, 122 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 12(d)). However, a district court may consider documents that are incorporated by reference in the complaint. See DiFolco v. MSNBC Cable, LLC, 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the

complaint," it is not necessary for the Court to convert the motion to one for summary judgment in order to properly consider the information. See Chambers, 282 F.3d at 153.

Here, the Wackenhut defendants have provided the Court with a copy of the CBA between Wackenhut and the Local One Security Officers Union (Decl. of Lawrence F. Harrison ("Lawrence Decl.") Ex. 1) (hereinafter "CBA"), along with a copy of the Wackenhut Security Officer Handbook (Lawrence Decl. Ex. 2) (hereinafter the "Wackenhut Handbook"). Although House did not attach the documents to either of his complaints, both are clearly incorporated by reference. The Amended Complaint explicitly states that House aided in negotiating the CBA with Wackenhut (Am. Compl. ¶12) and refers to Wackenhut's "employee handbook/manual" as constituting a contract of employment. (Id. ¶52.) Therefore, the Court can and will consider the CBA and the Wackenhut Handbook in deciding this motion to dismiss.

This does not hold true, however, for Exhibit 3 attached to the Harrison Declaration. Exhibit 3 is a letter that was neither referenced in the Amended Complaint or attached to it, and does not appear to have been relied upon by House in drafting either of his complaints. I therefore decline to consider Exhibit 3, as doing so would require me to convert this motion into a Rule 56 motion for summary judgment. See Fed. R. Civ. P. 12(d).

**C. House's Breach of Contract Claim is Dismissed**

House purports to raise a breach of contract claim based strictly on the Wackenhut Handbook, which he contends constitutes a binding employment contract. (Am. Compl. ¶52.)

The Wackenhut Handbook expressly disclaims that it is a contract between Wackenhut and its employees. It states (in all capital letters) that:

> THIS HANDBOOK IS INTENDED AS A GUIDE FOR THE EFFICIENT AND PROFESSIONAL PERFORMANCE OF YOUR JOB. NOTHING HEREIN CONTAINED SHALL BE

> CONSTRUED TO BE A CONTRACT BETWEEN THE EMPLOYER AND THE EMPLOYEE. ADDITIONALLY, THIS HANDBOOK IS NOT TO BE CONSTRUED BY ANY EMPLOYEE AS CONTAINING BINDING TERMS AND CONDITIONS OF EMPLOYMENT. THE COMPANY RETAINS THE ABSOLUTE RIGHT TO TERMINATE ANY EMPLOYEE, AT ANY TIME, WITH OR WITHOUT GOOD CAUSE. MANAGEMENT RETAINS THE RIGHT TO CHANGE THE CONTENTS OF THIS HANDBOOK, AS IT DEEMS NECESSARY, WITH OR WITHOUT NOTICE.

(Harrison Decl. Ex. 2.)

"It is well settled under New York law that a disclaimer in an employment handbook indicating that it is not a contract precludes a breach of contract claim." Chow v. Stride Rite Corp., No. 05 Civ. 02417 (PGG), 2009 WL 196030, at *11 (S.D.N.Y. Jan. 27, 2009) (citing White v. Home Depot, Inc., No. 04 Civ. 401, 2008 WL 189865, at *8 (E.D.N.Y. Jan. 17, 2008)); see also Gomariz v. Fotote, Cone & Belding Comm'cns, Inc., 228 A.D.2d 316, 317 (1st Dep't 1996) ("The court also properly found that plaintiff . . . had failed to state a cause of action for breach of contract as against defendants based upon a provision in an employment handbook . . . . The handbook prominently stated, in an explicit disclaimer, that it did not constitute an employee contract, and therefore did not place an express contractual limitation upon the employer's unfettered right to terminate that at-will employment.").

The explicit disclaimer thus precludes any breach of contract claim based on the Wackenhut Handbook. Count V is therefore dismissed.

**D. House's IIED Claim Is Dismissed**

House's IIED claim is based on his allegation that the Wackenhut defendants "harass[ed] him with false allegations of sleeping on the job and by bringing unsubstantiated disciplinary charges against him." (Am. Compl. ¶33.) In New York, the tort of IIED requires that a plaintiff

show: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993)). It is "an extremely disfavored cause of action under New York law that is routinely dismissed on pre-answer motion." Schaer v. City of New York, No. 09 Civ. 7441 (CM), 2011 WL 1239836, at *7 n.4 (S.D.N.Y. Mar. 25, 2011).

House has failed to allege "extreme and outrageous conduct." The New York Court of Appeals has identified this element as "the one most susceptible to determination as a matter of law." Howell, 81 N.Y.2d at 121. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 122.

That is an extremely lofty standard, one that is definitively not met by House's allegations. Although House's Amended Complaint tracks the language of Howell by alleging that "Defendants' conduct was extreme and outrageous, went beyond all bounds of common decency, was atrocious, utterly intolerable in a civilized society," (Am. Compl. ¶35), that is precisely the type of conclusory allegation which the Court is not required to credit on a motion to dismiss. Iqbal, 129 S. Ct. at 1949-50.

The allegedly false statements here do not even begin to approach the Howell standard, and the Amended Complaint therefore fails to state a claim for IIED with regard to those statements. See Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 372 (W.D.N.Y. 2010) ("Defamatory statements are generally not sufficiently extreme and outrageous to support an IIED claim."). It also fails to state a claim with regard to the allegedly unsubstantiated

disciplinary charges brought against House. In general, "New York Courts are reluctant to allow [IIED] claims in employment discrimination cases . . . . Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [IIED] because the conduct alleged is not sufficiently outrageous." Semper v. New York Methodist Hosp., 786 F. Supp. 2d 566, 587 (E.D.N.Y. 2011). As in Semper, House's allegation of false disciplinary charges is insufficiently outrageous, as a matter of law, to withstand a Rule 12(b)(6) motion to dismiss.

Therefore, Count II is dismissed.

**E. House's Defamation Claim is Not Preempted**

**1. Preemption Under the Labor Management Relations Act**

Section 301 of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (2006).

"The Supreme Court has interpreted section 301 as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985)). It is clear that "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." Allis-Chalmers, 471 U.S. at 210. However, the preemptive effect of § 301 extends beyond suits for breach of contract:

> Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

Id. at 211 (emphasis added).

That is not to say that § 301 preemption is unqualified. "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . ." Id. Instead, it is "where the resolution of a state-law claim depends on an interpretation of the CBA [that] the claim is pre-empted." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 261 (1994) (emphasis added); see also Allis-Chalmers, 471 U.S. at 220 ("We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law.") (emphasis added). "[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Foy v. Pratt & Whitney Grp., 127 F.3d 229, 233 (2d Cir. 1997) (citing Livadas v. Bradshaw, 512 U.S. 107, 124 (1994)). Instead, "A plaintiff's claims must be tested by 'whether the claims exist independent of any rights established by the [CBA]' or whether the claims are 'inextricably intertwined' with consideration of the terms of the collective bargaining agreement." Wilhelm v. Sunrise Northeast, Inc., 923 F. Supp. 330, 335 (D. Conn. 1995) (citing Allis-Chalmers, 471 U.S. at 213)).

The Second Circuit has acknowledged that, "The principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied," id., and that, "The boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." Wynn v. AC Rochester, 273 F.3d 153, 158 (2d Cir. 2001).

**2. Application**

House's defamation claim, based on defendants' statement that he was caught sleeping on the job, is not preempted. "To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" Thai v. Cayre Grp., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010). The defamation claim does not require any interpretation of the CBA whatsoever. The Wackenhut defendants' contention that the defamation claim is preempted because it is predicated upon statements which led to Wackenhut's decision to terminate House is erroneous. Although consideration of the claim might require a passing reference to the disciplinary structure established by the CBA, it would not demand any interpretation of the CBA leading to LMRA preemption.

In support of their argument that the defamation claim is preempted, the Wackenhut defendants cite Boyum v. Horizion Condominium, No. 05 Civ. 4801, 2007 WL 576052 (S.D.N.Y. Feb. 22, 2007). However, Boyum does not establish a per se rule that all defamation claims arising when there is a CBA in effect are preempted by § 301. Instead, the Boyum Court held that one of the defamation claims in that particular case was preempted because the alleged defamatory statement was that the plaintiff had been insubordinate; the determination of whether

the plaintiff had, in fact, been insubordinate—a key determination in the defendant's defamation defense of "truth"—required the court to interpret the Management Rights clause of the CBA at issue. Id. at *9. That is an exceedingly narrow ground for preempting a defamation claim, and is not applicable here, where the alleged defamatory statements are simply that House was asleep while on duty. The Court certainly does not require the benefit of any contractual clause to determine whether or not House was, in fact, asleep.

Therefore, House's defamation claim is not preempted by § 301 of the LMRA, and the motion to dismiss is denied as to Count III.

## IV. CONCLUSION

For all of the above reasons, the motion to dismiss is GRANTED with respect to Counts II and V and DENIED with respect to Count III.

Counts II and V are dismissed with prejudice.

The Clerk of the Court is respectfully directed to remove the instant motion (ECF Dkt. No. 21) from the Court's list of pending motions.

Dated: December 15, 2011

U.S.D.J.