David N. Wynn (DW8660)
Shawanna Johnson (SJ5391)
ARENT FOX LLP
1675 Broadway
New York, NY  10019
(212) 484-3900
(212) 484-3990 (facsimile)
*wynn.david@arentfox.com*
*johnson.shawanna@arentfox.com*

Henry Morris, Jr. (Admitted *Pro Hac Vice*)
ARENT FOX LLP
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 857-6000
(202) 857-6395 (facsimile)
*morris.henry@arentfox.com*

*Attorneys for Defendant Wackenhut Services,*
*Inc., James Carbonaro, and Renato Velati*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JEFFREY HOUSE,** | |
| **Plaintiff,** | **Civil Case No.  10 CV 9476 (CM) (FM)** |
| **v.** | |
| **WACKENHUT SERVICES  INC.,** *et al.,* | **Judge Colleen McMahon** |
| **Defendants.** | |

**WACKENHUT SERVICES, INC., JAMES CARBONARO, AND RENATO VELATI'S**
**MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.  Introduction ........................................................................................................4

II.  Facts ..................................................................................................................5

    A.  The Parties ..............................................................................................5

        1.  Wackenhut ..................................................................................5

        2.  James Carbonaro ........................................................................7

        3.  Renato Velati .............................................................................7

        4.  Janet Napolitano ........................................................................7

        5.  House ..........................................................................................7

    B.  The FPS's Request that Wackenhut Remove House from the Contract and All other GSA Properties ..........................................................8

    C.  Wackenhut's Decision to Terminate House ..........................................10

    D.  Wackenhut's Treatment of Similarly-Situated Employees .................11

    E.  House's Department of Homeland Security Complaint .......................11

    F.  House's EEOC Charge ..........................................................................12

    G.  House's Purported Hostile Work Environment ...................................12

III.  Argument ...........................................................................................................13

    A.  The Court should enter judgment in Wackenhut, Carbonaro, and Velati's favor ...........................................................................................13

        1.  The Standard for Granting Summary Judgment ........................13

        2.  Wackenhut, Carbonaro, and Velati did not discriminate against House ..........................................................................................14

        3.  House's hostile work environment claim, if he has brought one, fails as a matter of law ...............................................................17

            a.  This Court lacks subject matter jurisdiction to adjudicate a Title VII or ADEA hostile work environment claim ...................17

            b.  Wackenhut, Carbonaro, and Velati did not subject House to a hostile work environment ........................................................18

        4.  House's Retaliation Claim, if he has brought one, fails as a matter of law ...............................................................................21

        5.  Wackenhut and the FPS are not a single integrated enterprise .................21

    B.  House's defamation claim fails as a matter of law ..............................22

IV.  Conclusion .........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert v. Loksen*,
239 F.3d 256 (2d Cir.2001) .................................................................... 20

*Alston v. Microsoft Corp.*,
No. 08 Civ. 3547, 2009 WL 1116360 (S.D.N.Y. Apr. 27, 2009) ......................................... 15

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................. 11

*Bermudez v. New York*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011) ................................................................ 11, 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................. 11

*Ciuffetelli v. Apple Bank For Savings*,
No. 99-7741, 2000 WL 340388 (2d Cir. Mar. 30, 2000) ...................................... 19

*Cook v. Arrowsmith Shelburne, Inc.*,
69 F.3d 1235 (2d Cir.1995) ........................................................................ 18

*Deravin v. Kerik*,
335 F.3d 195 (2d Cir.2003) ........................................................................ 14

*Diaz v. Mitchell's Salon and Day Spa, Inc.*,
2011 WL 379097 (S.D. Ohio Feb. 2, 2011) ........................................................ 13

*Drummond v. IPC Int'l, Inc.*,
400 F. Supp. 2d 521 (E.D.N.Y.2005) ............................................................... 14

*Ennis v. Sonitrol Mgmt. Corp.*,
2006 WL 177173, (S.D.N.Y. Jan. 25, 2006) ........................................................ 16

*Farrell v. Abbott Labs, Inc.*,
2011 WL 4055167 (W.D. Pa Sept. 12, 2011) ....................................................... 13

*Fleming v. Verizon New York, Inc.*,
419 F. Supp. 2d 455 (S.D.N.Y. 2005) .............................................................. 15

*Flores v. The Pinnacle Group*,
No. 06 Civ 0986 JSR, 2007 WL 646290 (S.D.N.Y. Feb. 27, 2007) ....................................... 11

*Forts v. City of N.Y. Dep't of Corr.,*
   2003 WL 21279439 (S.D.N.Y. June 4, 2003) ................................................ 16

*Foster v. Churchill,*
   87 N.Y.2d 744 (N.Y. 1996) .................................................................... 19, 20

*Gallo v. Prudential Residential Servs., Ltd. P'ship,*
   22 F.3d 1219 (2d Cir. 1994) ...................................................................... 11

*Gross v. FBL Fin. Servs., Inc.,*
   ___U.S. ___, 129 S. Ct. 2343 (2009) ..................................................... 11, 12

*Hamilton v. Wilson,*
   No. 03 Civ. 5685, 2004 WL 169789 (S.D.N.Y. Jan. 28, 2004) ........................... 15

*Harris v. Forklift Sys., Inc.,*
   510 U.S. 17 (1993) .................................................................................... 16

*Hogan v. J.P. Morgan Chase Bank,*
   402 F. App'x 590 (2d Cir. 2010) .................................................................. 12

*Holowecki v. Fed. Express Corp.,*
   382 F. App'x 42 (2d Cir. 2010) ................................................................... 12

*House v. Wackenhut Services, Inc.,*
   2011 WL 6326100 (S.D.N.Y. Dec. 16, 2011) .................................................. 1

*Ifill v. United Parcel Service,*
   No. 04 Civ. 5963, 2008 WL 2796599 (S.D.N.Y Jul. 17, 2008) ........................... 13

*Jackson v. Citiwide Corporate Transp., Inc.,*
   No. 02 Civ. 1323, 2004 WL 307243, (S.D.N.Y. Feb. 17, 2004) ........................... 13

*Jain v. Marsh Inc.,* No.
   08 Civ. 2515, 2010 WL 743553 (S.D.N.Y. March 1, 2010) ................................ 13

*James v. New York Racing Ass'n.,*
   233 F.3d 149 (2d Cir. 2000) ....................................................................... 12

*Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.,*
   2009 WL 3682458 (S.D.N.Y. Oct. 25, 2009) ................................................. 15

*Jiggetts v. Diaz,*
   2009 WL 749575 (S.D.N.Y. Mar. 20, 2009) .................................................. 15

*Kumaga v. NYC School Constr. Auth.,*
27 Misc.3d 1207(A) (N.Y. Sup. Ct. 2010) ............................................................. 16

*Love v. William Morrow & Co.,*
193 A.D.2d 586 (2d Dep't 1993) ........................................................................... 19

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ..................................................................................... 11, 12

*Melendez v. Int'l Serv. Sys., Inc.,*
No. 97 Civ. 8051, 1999 WL 187071 (S.D.N.Y. 1999) ........................................ 15

*Pascal v. Storage Tech. Corp.,*
152 F.Supp.2d 191 (D. Conn. 2001) .................................................................... 14

*Richardson v. N.Y. State Dep't of Corr. Serv.,*
180 F.3d 426 (2d Cir.1999) .................................................................................. 16

*Shah v. N.Y. State Dep't of Civil Serv.,*
168 F.3d 610 (2d Cir. 1999) ................................................................................. 14

*Shamley v. ITT Corp.,*
869 F.2d 167 (2d Cir. 1989) ................................................................................. 20

*Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper,*
281 F. Supp. 2d 689 (S.D.N.Y. 2003) .................................................................. 16

*Terry v. Ashcroft,*
336 F.3d 128 (2d Cir. 2003) ............................................................................ 12, 14

*White v. Fuji Photo Film USA, Inc.,*
434 F. Supp. 2d 144 (S.D.N.Y. 2006) .................................................................. 16

*Williams v. New York City Hous. Auth.,*
61 A.D.3d 62 (1st Dep't 2009) ............................................................................. 16

**STATUTES**

Fed. R. Civ. P. 56(c) ...................................................................................................... 10

New York Civil Rights Law, Article 4, Section 40-C ...................................................... 1

New York Executive Law Section 296 ............................................................................ 1

Title VII Civil Rights Act of 1964 .................................................................... 4, 14, 17

Age Discrimination in Employment Act ........................................................... 4, 14, 17

## I.      Introduction

G4S Government Solutions, Inc., formerly known as Wackenhut Services, Inc.

("Wackenhut") has a contract with the Federal Protective Service ("FPS") to provide security

services and personnel to federal facilities in the New York-metropolitan area.

House was a Wackenhut Security armed security guard assigned to one of those facilities.

But, the FPS asked Wackenhut to remove him from the contract and not allow him to work at

any other GSA owned or leased locations.  Why?  Because he was observed sleeping on the job

with an active computer game displayed, which placed people and property at risk.  [House Tr.

232:2-9, House Tr. Ex. 15 (Request for Removal from Service under DHS/FPS Contacts)].

Wackenhut removed House from the contract, as the FPS requested.  And, based on

information contained in the FPS's report, Wackenhut terminated him for sleeping on the job.

House responded by filing a baseless suit against Wackenhut, two Wackenhut employees

-- James Carbonaro and Renato Velati -- and Janet Napolitano, Secretary of the Department of

Homeland Security.

House's Amended Complaint is not a model of clarity.  But, it appears that two claims

remain against Wackenhut, Carbonaro, and Velati:[1]

- House's contention, in Count I, that (1) Wackenhut violated Title VII and the Age

  Discrimination in Employment Act; and (2) Wackenhut, Carbonaro, and Velati violated

  New York Executive Law Section 296 (New York State Executive Law, Article 15, §

  296 (New York State Human Rights Law)) (hereinafter "NYSHRL § 296") and New

  York Civil Rights Law, Article 4, Section 40-C (hereinafter "NYCRL § 40-C") by

---

[1]      Earlier, the Court dismissed House' two other claims: (1) His claim that Wackenhut, Carbonaro, and Velati intentionally caused him to suffer severe emotional distress; and (2) his claim that they breached his employment agreement.  *House v. Wackenhut Services, Inc.*, 2011 WL 6326100, at *4-5 (S.D.N.Y. Dec. 16, 2011).

terminating him due to his race, and age, Am. Compl. ¶¶ 6-31; and

- his contention, in Count III, that Wackenhut, Carbonaro, and Velati defamed him by "falsely informing James Isom, Senior Vice President of Wackenhut Services, Inc., that [House] was 'sleeping on post' and 'this was not the first time that House was observed sleeping on post by inspector Clarke[]' on the job and recommended dismissal on December 28, 2009." Am. Compl. ¶ 46.

But, the undisputed facts make clear that Wackenhut fired House due to his reported misconduct, not because of his race or age. The facts establish, as well, that his defamation claim must fail because the statement upon which he predicates it is true and privileged.

In short, House has concocted his claims wholly out of thin air. Thus, as a matter of law, his case is doomed. Accordingly, the Court should enter a judgment in Wackenhut, Carbonaro, and Velati's favor.

## II. Facts[2]

### A. The Parties

#### 1. Wackenhut

Wackenhut is a private company that supplies armed and unarmed security personnel to government customers. S.J. Ex. 1 [House Tr. 46:10-14]; S.J. Ex. 2 [Harrison Decl. ¶ 2].[3]

Through its National Capital Region (the "NCR"), Wackenhut provides security services and personnel to federal facilities in the New York-metropolitan area, including 201 Varick Street, in Manhattan, under a contract with the FPS, Wackenhut's sole customer in the New York-metropolitan area. S.J. Ex. 1 [House Tr. 48:21-24; House Tr. 66:4-21; House Tr. 232:10-

---

[2]     To the extent that Wackenhut, Carbonaro, and Velati rely on House's version of the facts, they do so for the purposes of this Motion, only.

[3]     Citations to Lawrence Harrison's declaration are denominated "Harrison Decl. ¶ ___." Citations to exhibits to his declaration are denominated "Harrison Decl. ¶ ___, Ex. ___."

14; S.J. Ex. 2 [Harrison Decl. ¶ 2].

Wackenhut policy prohibits unlawful discrimination.  S.J. Ex. 1 [House Tr. 86:6-15; House Tr. Ex. 12 (Wackenhut Human Resources Manual: Equal Employment Opportunity, HR 515)]; S.J. Ex. 2 [Harrison Decl. ¶ 4; Harrison Decl. Ex. A (G4S Wackenhut Security Officer Handbook, at 14)].

Also, to promote equal treatment, Wackenhut's NCR has promulgated a standard operating procedure for administering discipline.  It includes a disciplinary matrix that prescribes the appropriate workplace disciplinary measures for each contemplated offense.  S.J. Ex. 1 [House Tr. 64:21 -  Tr. 66:8; House Tr. Ex. 8, Wackenhut Services, Inc. (NCR) Standard Operating Procedure: Administration of Discipline No. 358 ("Disciplinary Matrix")]; S.J. Ex. 2 [Harrison Decl. ¶¶ 5-6].

Wackenhut has procedures for aggrieved employees to complain about alleged discrimination and harassment.  S.J. Ex. 1 [House Tr. 78:8 – Tr. 79:4; House Tr.  80:21 – Tr. 81:8; House Tr. 81:9 – Tr. 82:8; House Tr. Ex. 10 (Sexual Harassment/Workplace Harassment and Off-Duty /Fraternization Statement W-211); House Tr. Ex. 11 (Wackenhut Services Inc. Policy and Procedures Manual, Sexual/Workplace Harassment Policy and Off-Duty Conduct/Fraternization Policy, WS 520)].  Wackenhut's policy is to investigate such complaints. Offenders are subject to disciplinary action, up to and including discharge. S.J. Ex. 1 [House Tr. Ex. 10 (Sexual Harassment/Workplace Harassment and Off-Duty /Fraternization Statement W-211); House Tr. Ex. 11 (Wackenhut Services Inc. Policy and Procedures Manual, Sexual/Workplace Harassment Policy and Off-Duty Conduct/Fraternization Policy, WS 520)]. Also, Wackenhut prohibits retaliation against individuals who file complaints and participate in its investigations.  S.J. Ex. 1 [House Tr.  Ex. 10 (Sexual Harassment/Workplace Harassment and

Off-Duty /Fraternization Statement W-211); House Tr. Ex. 11 (Wackenhut Services Inc. Policy and Procedures Manual, Sexual/Workplace Harassment Policy and Off-Duty Conduct/Fraternization Policy, WS 520)].

Wackenhut independently runs its organization, through its headquarters in West Palm Beach, Florida.  It shares no employees with the federal government, maintains its own bank accounts and books, issues its own paychecks, and handles its own tax returns.  Likewise, it has its own human resources personnel, who set employment policy applicable to Wackenhut employees.  It decides who to hire, fire, and discipline.  Wackenhut and the FPS have no overlapping managers.  And Wackenhut manages its own finances.  S.J. Ex. 2 [Harrison Decl. ¶ 7.]

### 2.    James Carbonaro

James Carbonaro is Wackenhut's Project Manager for the Wackenhut/FPS contract.  S.J. Ex. 3 [Carbonaro Decl. ¶ 2].[4]

### 3.    Renato Velati

Renato Velati is Wackenhut's integrity control officer for the contract.  S.J. Ex. 4 [Velati Decl. ¶ 1].[5]

### 4.    Janet Napolitano

Janet Napolitano is Secretary of the United States Department of Homeland Security and head of the FPS.  Am. Compl. ¶ 10.

### 5.    House

On November 1, 2007, Wackenhut hired House as an armed security officer for the

---

[4]    Citations to Carbonaro's declaration are denominated "Carbonaro Decl. ¶ ___."  Citations to exhibits to his declaration are denominated "Carbonaro Decl. ¶ ___, Ex. ___."
[5]    Citations to Velati's declaration are denominated "Velati Decl. ¶ ___."  Citations to exhibits to his declarations are denominated "Velati Decl. ¶ ___, Ex. ___."

Wackenhut/FPS contract.  He was, at the time, 57 years old.  S.J. Ex. 1 [House Tr. 42:13-19; House Tr. 46:8-9; House Tr. Ex. 6 (Letter from Kevin Conry to Plaintiff, dated November 1, 2007)].  During his employment with Wackenhut, the plurality of Wackenhut security officers assigned to the contract were black.  S.J. Ex. 2 [Harrison Decl. ¶ 8]; S.J. Ex. 5 [Request for Admission No. 19].

**B.    The FPS's Request that Wackenhut Remove House from the Contract and All other GSA Properties**

Wackenhut assigned House to 201 Varick Street.  S.J. Ex. 1 [House Tr. 66:4-6], which is a Level 4 location, ranking it among the most secure federal properties.  S.J. Ex. 1 [House Tr. 213:20 – Tr. 214:11].

Security officers assigned to 201 Varick Street must remain alert while on duty.  S.J. Ex. 1 [House Tr. 118:4-17].  The FPS put the matter this way:

> You must be aware of the environment around you and be able to notice even the slightest changes or unusual conditions.  By being observant and aware, you will prevent and detect crime or unauthorized behavior.  You must watch for deviations from the norm, such as a strange car parked in an unauthorized space, a person approaching or coming from an area that is not normally used or nervousness/unstable behavior from a person approaching you.  Alertness can only be achieved by a keen watchfulness and by diligent application of the patrol or post requirements.  Alarm systems enhance the effectiveness of security forces, but nothing is a substitute for the alertness of security force personnel.  The degree of alertness determines whether security is effective or lax.

S.J. Ex. 5 [Request for Admission Nos. 5-6; House Tr. Ex. 9 (FPS Security Guard Information Manual) § 2.8].

Consistent with that mandate, the Wackenhut/FPS contract makes clear that "[u]sing personal equipment such as cellular phones, computers, personal digital assistants, electronic games, audio or video equipment, televisions, etc., while on duty," "sleeping while on duty, [and] failing to devote full time and attention to assigned duties" are cause for immediate removal from the contract.  S.J. Ex. 5 [Request for Admission Nos. 1 -2; House Tr. Ex. 7,

(Statement of Work) §§ 16.B.3, 16.B.22)].  And, under the contract, Wackenhut must honor the

government's removal requests.

> The Government may request the Contractor to immediately remove any employee from
> any and all locations where the Contractor has contracts with the FPS should it be
> determined that the employee has been disqualified for either employment suitability,
> performance suitability, or security reasons, or who is found to be unfit for performing
> security duties during his/her tour of duty.  The Contractor must comply with these
> requests in a timely manner.  For clarification, a determination of unfitness may be made
> from, but not be limited to, incidents involving the most immediately identifiable
> delinquencies or violations of the Standard of Conduct.

S.J. Ex. 5 [House Tr. Ex. 7 (Statement of Work, at § 16.A.3)].

> That is precisely what happened here.

> On December 4, 2010, Alfredo Clarke was a FPS inspector, responsible for 201 Varick

Street.  S.J. Ex. 1 [House Tr. 172:12-14; House Tr. 238:7-15; House Tr. 442:7-443:3].  House

considered Clarke a friend.  S.J. Ex. 1 [House Tr. 413: House Tr. 414:20-25].

> On that date, Clarke observed House sleeping at his post with a laptop displaying an

active computer game.  S.J. Ex. 1 [House Tr. 215:1-11; House Tr. 221:12 – Tr. 222:10; House

Tr. Ex. 16 (FPS R2 Post Inspection Report]; S.J. 5 [Request for Admission Nos. 11-12].

> Clarke reported those observations and recommended that House no longer be allowed to

work at any GSA facilities.

> On 12/04/09 at approximately 0700 hours, security guard Jeffrey House was observed on
> King Street at Booth # 7 (South West) sleeping.  The guard also had a lap top with a
> mouse, which displayed an active computer game.  This is not the first time that the guard
> has been observed sleeping.  It's my recommendation that this guard should not be
> allowed to work on any GSA owned or leased locations.

S.J. Ex. 1 [House Tr. 221:12-15; House Tr. Ex. 16 (FPS R2 Post Inspection Report);

> On January 6, 2010, Rafael Bou, III, the FPS's Area Commander and Lead Contract

Officer Technical Representative for the Wackenhut/FPS contract, asked Wackenhut to remove

House from the contract, pending the Contract Officer's approval.  S.J. Ex. 3 [Carbonaro Decl. ¶

3; Carbonaro Decl. Ex. A (Electronic Mail Memorandum from Rafael Bou, III to James Carbonaro, dated January 6, 2010)].  Wackenhut complied with that request.  S.J. Exhibit 4 [Carbonaro Decl. ¶ 4; Carbonaro Decl. Ex. B (Electronic Mail Memorandum from James Carbonaro to Rafael Bou, III, dated January 6, 2010)].

Ultimately, the FPS decided that House's dereliction of duty placed people and property at risk.  S.J. Ex. 1 [House Tr. 231:9-17; House Tr. 232:1-9; House Tr. Ex. 15 (Request for Removal from Service under DHS/FPS Contacts)].  Thus, it asked Wackenhut to remove House from all Homeland Security/FPS contracts and not allow him to work at any GSA owned or leased locations.  S.J. Ex. 1 [House Tr. 231:9-17, House Tr. Ex. 15 (Request for Removal from Service under DHS/FPS Contracts)].

### C.      Wackenhut's Decision to Terminate House

Relying on information contained in the FPS's report and removal request, Velati issued a disciplinary notice, citing House for sleeping on duty, Offense No. 404.25 under the Disciplinary Matrix.  Also, Velati recommended that Wackenhut dismiss House, the sanction that the Disciplinary Matrix prescribes for that infraction.  S.J. Ex. 1 [House Tr. 247:1 – Tr. 248:12; House Tr. 251:11-16; House Tr. Ex. 8 (Disciplinary Matrix); House Tr. Ex. 17 (Disciplinary Report)]; S. J. Ex 4 [Velati Decl. ¶ 2].  Velati issued the citation and recommendation without regard to House's race and age.  S.J. Ex. 4 [Velati Decl. ¶ 4].

Relying on information contained in the FPS report and removal request, Carbonaro concurred with Velati's citation and recommended disciplinary action.  And, Carbonaro did so without regard to House's race and age.  S.J. Ex. 1 [House Tr. 283:12-15]; S.J. Ex. 3 [Carbonaro Decl. ¶ 6].

Later, the NCR's Senior Vice President and General Manager, James Isom, decided to terminate House.  Isom based on information contained in the FPS's report, without regard to House's race and age.  House S.J. Ex. 6 [Isom Decl. ¶¶ 3-5].

**D.     Wackenhut's Treatment of Similarly-Situated Employees**

Wackenhut has removed from the Wackenhut/FPS contract and terminated employees who are materially younger than House and not black.  S.J. Ex. 5 [Request for Admission Nos. 20-22].

For example, the FPS reported that Raymond Lewis, who is white, made false and fraudulent statements to FPS agents.  At the FPS's request, Wackenhut removed Lewis from the contract.  Also, Wackenhut terminated Lewis for committing offense 404.39 under the Disciplinary Matrix: falsification or unlawful concealment, mutilation, removal, or destruction of any official documents or records or concealment of material facts by willful omissions from official documents, records, or statements (written or verbal).  S.J. Ex. 3 [Carbonaro Decl. ¶ 7].

The FPS also reported that Paul Tam, who is Asian, failed to perform his prescribed duties.  Upon request, Wackenhut removed Tam from the Wackenhut/FPS contract.  Wackenhut also terminated Tam for failing to satisfy the contract's requirements.  S.J. Ex. 3 [Carbonaro Decl. ¶ 8].

Likewise, Wackenhut honored the FPS's request to remove Raul Velazquez, who is Hispanic, from the contract for unsuitability and gross misconduct.  Wackenhut also terminated Velazquez for failing to satisfy the contract's requirements.  S.J. Ex. 3 [Carbonaro Decl. ¶ 9].

**E.     House's Department of Homeland Security Complaint**

House complained to the Department of Homeland Security that Clarke wrote a false report and that Wackenhut fired him due to his union membership.  The Department, however, investigated the matter and concluded otherwise:

The RAC/NK-OPR investigation shows there is credible evidence as shown through witness statements and video footage that Mr. House was sleeping on the job. Mr. House stated that he was in violation of the unauthorized use of a laptop while at his post of duty. The FPS negotiated guidelines established in the Wackenhut Security Guard information Manual states: 'violations that could result in consequences of damage to or loss of federal property and/or serious bodily injury to personnel will result in the removal from the federal contract.' Mr. House's position with the union is tenuous and limited to past contract negotiations. Mr. House's relationship with the union was not mentioned in the dismissal paperwork. This investigation has determined that there is no evidence of false reporting by PSS CLARKE. This case is closed.

S.J. Ex. 5 [Request for Admission No. 26; US_003700310 (Department of Homeland Security

Immigration and Customs Enforcement Office of Professional Responsibility Report of

Investigation for Case No. 201005019)].

###### F.    House's EEOC Charge

House also filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC Charge"). In the Charge, House claims that Wackenhut terminated him

due to his race and age. But, House says nothing about a hostile work environment. S.J. Ex. 1

[House Tr. 24:5-9; House Tr. Ex. 4 (EEOC Charge)].

###### G.    House's Purported Hostile Work Environment

House does not include hostile work environment as a separate count, but he may seek

relief under a hostile work environment theory. If so, he appears to predicate his claim on 4

contentions:

- Wackenhut, he contends, annually requires security officers to qualify to use

  firearms at a Long Island-based shooting range. He claims that the range is

  difficult for some black officers to reach. But, House admits that he does not

  know why Wackenhut selected the range and that all Wackenhut security officers

  must use it. S.J. Ex. 1 [House Tr. 101:5-15; House Tr. 102:22 – Tr. 104:14-24].

- House contends that he overheard people, whom he neither saw nor can identify,

joke that he was sleeping on the job.  S.J. Ex. 1 [101:23 – 102:12; House Tr. 137:422].  That happened, House says, about 5 or 6 times.  S.J. Ex. 1 [House Tr. 140:3-13].

- House contends that, sometimes, the security guard scheduled to relieve him arrived late.  S.J. Ex. 1 [House Tr. 101:18-19; House 130:17-21].  On occasion, the tardy security officer was black.  S.J. Ex. 1 [House Tr. 134:4-12].  He can identify only one white security officer – Amin – who relieved him late.  S.J. Ex. 1 [House Tr. 131:19 – Tr. 132:3].  That happened, according to House from 3 to 5 times during his employment with Wackenhut.  S.J. Ex. 1 [House Tr. 132:24 – Tr. 133:22].  If Amin were more than 15 minutes late, Wackenhut, upon request, compensated House for his additional time on post.  S.J. Ex. 1 [House Tr. 135:13 – Tr. 137:3].

- House contends that Wackenhut did not want employees to take bathroom and lunch breaks.  S.J. Ex. 1 [House Tr. 101:5-17].  House admits, however, that he took such breaks if someone held post for him.  S.J. Ex. 1 [House Tr. 116:17 – Tr. 118:3; House Tr. 306:6-11; House Tr. 308:11 – Tr. 309:14].

## III.   Argument

### A.   The Court should enter judgment in Wackenhut, Carbonaro, and Velati's favor.

#### 1.   The Standard for Granting Summary Judgment

Federal Rule of Civil Procedure 56 mandates entry of summary judgment if the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

Summary judgment is not "a disfavored procedural shortcut."  Rather, it is an "integral

part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (citation omitted).

Rule 56 allows courts to "isolate and dispose of factually unsupported claims or defenses, and . . . it should be interpreted in any way that allows it to accomplish this purpose."  *Id*.  at 323-24.  There is no need for a trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (Summary judgment is warranted when "no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight, there is no genuine issue of material fact.").

Assessed by that standard, House's case against Wackenhut, Carbonaro, and Velati is doomed.

### 2.    Wackenhut, Carbonaro, and Velati did not discriminate against House.

Courts analyze Title VII, ADEA, NYSHRL and NYCRL claims under the Supreme Court's familiar *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Bermudez v. New York*, 783 F. Supp. 2d 560, 576-77 (S.D.N.Y. 2011); *Flores v. The Pinnacle Group*, No. 06 Civ 0986 JSR, 2007 WL 646290, at *3 (S.D.N.Y. Feb. 27, 2007).[6]

---

[6]    The Supreme Court has questioned whether the *McDonnell Douglas* analysis applies to ADEA claims.  *Gross v. FBL Fin. Servs., Inc.,* ___U.S. ___, 129 S. Ct. 2343, 2349 (2009) ("[T]he Court has not definitively decided whether the evidentiary framework of [*McDonnell Douglas*] utilized in Title VII cases is appropriate in the ADEA context.").  Historically, however, the Second Circuit has applied *McDonnell Douglas* to those claims.  And, it has continued to do so after *Gross*.  *See Holowecki v. Fed. Express Corp.,* 382 F. App'x 42, 45 n. 2 (2d Cir. 2010) ("Unless and until the Supreme Court instructs us to do otherwise, we will

First, the plaintiff must establish a *prima facie* case by proving that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) suffered under "circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft,* 336 F.3d 128, 137-38 (2d Cir. 2003).

If the plaintiff succeeds, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for its challenged action. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Terry*, 336 F.3d at 138.

If the employer does so, the *McDonnell Douglas* presumptions disappear. And, in a race discrimination case, the plaintiff must adduce sufficient evidence to support a reasonable inference that discrimination occurred. *See James v. New York Racing Ass'n.,* 233 F.3d 149, 156 (2d Cir. 2000) (After *"McDonnell Douglas* presumptions disappear . . . the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred.").

An ADEA plaintiff faces a higher burden. He must prove that a reasonable jury could conclude, based on the evidence, that his age was the "but-for" cause of the challenged employment decision. *Gross*, ___ U.S. ___, 129 S. Ct. at 2352; *Holowecki*, 382 F. App'x, at 45; *Hogan v. J.P. Morgan Chase Bank,* 402 F. App'x 590, 593 (2d Cir. 2010).

House's claims fail under that analysis.

House contends that Wackenhut terminated him due to his race and age. And, Wackenhut, Carbonaro, and Velati assume, for the purposes of this Motion, that House can state a prima facie case.

But, there is no dispute that the FPS, Wackenhut's sole New York-metropolitan area

---

continue to apply *McDonnell Douglas* to claims arising under the ADEA.").

customer, harbored grave concerns about his performance.  FPS reported that he was found

sleeping on duty with an active computer game displayed.  FPS indicated that his inattention to

duty placed people and property at risk.  And, FPS asked Wackenhut to remove House from the

Wackenhut/FPS contract, and not allow him to work at any other GSA owned or leased

locations.

    Wackenhut terminated House based on the information contained in the FPS's report and

request for removal.  Surely, the anti-discrimination law did not require Wackenhut to do

otherwise.  *See Jain v. Marsh Inc.*, No. 08 Civ. 2515, 2010 WL 743553, at *3 (S.D.N.Y. March

1, 2010) ("Although Plaintiff was removed from certain Marsh accounts, the evidence

establishes that there were legitimate non-discriminatory reasons for doing so -- primarily

customer complaints."); *Ifill v. United Parcel Service*, No. 04 Civ. 5963, 2008 WL 2796599, at*

7 (S.D.N.Y. July 17, 2008) (receiving customer complaints is legitimate, business reason for

employer's decision to take adverse employment action); *Jackson v. Citiwide Corporate Transp.,*

*Inc.,* No. 02 Civ. 1323, 2004 WL 307243, at *4 (S.D.N.Y. Feb. 17, 2004), (employer established

legitimate, non-discriminatory reason for discharging employee where one of its major

customers had complained that plaintiff was rude and refused to have future dealings with

plaintiff); *Farrell v. Abbott Labs, Inc.*, 2011 WL 4055167, at * 8 (W.D. Pa Sept. 12, 2011)

("Abbott has articulated a legitimate non-discriminatory reason for Plaintiff's termination.

Namely, that Plaintiff was terminated because of multiple customer complaints and several

violations of both Abbott's Code of Business Ethics and Compliance and Abbott's Sampling

Policy Manual.); *Diaz v. Mitchell's Salon and Day Spa, Inc.*, 2011 WL 379097, at * 6 (S.D. Ohio

Feb. 2, 2011) ("In its brief, defendant assumes that plaintiff has met its prima facie case under

the various statutes and emphasizes that, based on the numerous customer complaints about

plaintiff's services, it had a legitimate nondiscriminatory reason for discharging her.  Indeed, the customer complaints amply support defendant's stated sole reason for firing the plaintiff.");  *Drummond v. IPC Int'l, Inc.,* 400 F. Supp. 2d 521, 531 (E.D.N.Y.2005) ("Here, Defendants have shown that they initially suspended Plaintiff at the request of Simon, one of IPC's clients, after a Simon employee complained about Plaintiff's alleged sexually inappropriate behavior. This proffer satisfies Defendant's burden.");  *Pascal v. Storage Tech. Corp.,* 152 F. Supp. 2d 191, 211 (D. Conn. 2001) (assertion that employer reassigned plaintiff due to customer complaints and poor performance satisfied employer's burden of producing a legitimate, non-discriminatory reason for its actions).

Moreover, there no dispute that (1) during House's employment with Wackenhut, the plurality of Wackenhut security officers assigned to the Wackenhut/FPS contract were black; (2) Wackenhut hired House when he already was 57 years old; and (3) Wackenhut has removed from the contract and terminated employees who are materially younger than House and not black.

Surely no reasonable jury would infer discrimination under these circumstances.

> **3.     House's hostile work environment claim, if he has brought one, fails as a matter of law.**
>
> > **a.     This Court lacks subject matter jurisdiction to adjudicate a Title VII or ADEA hostile work environment claim**.

Title VII and ADEA plaintiffs must exhaust their administrative remedies with the EEOC before they sue. *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir. 2003); *Terry,* 336 F.3d at 150-51.  Also, under those statutes, a court may entertain only (1) claims that were raised in the administrative charge; or (2) claims that are reasonably related to those in the charge. *Deravin,* 335 F.3d at 200; *Terry,* 336 F.3d at 150-151; *Shah v. N.Y. State Dep't of Civil Serv.,* 168 F.3d

610, 613-14 (2d Cir. 1999).  Generalized allegations of discrimination in a charge are not enough

to preserve a hostile work environment claim for court.

> Plaintiff's EEOC Charge did not preserve her hostile work environment claim. The EEOC Charge makes no reference to a sexually hostile work environment.  Rather, the EEOC Charge claims only that 'women suffer blatant discrimination as male colleagues and supervisors alike, treat women different from their male counterparts'; that 'women have a difficult time 'fitting in' to men's roles; and 'that women and men who perform the same assignment and have the same issues/problems are treated differently. . . .'  The Court of Appeals has held such generalized assertions inadequate to define the scope of the EEOC investigation and serve as the predicate for claims in a federal lawsuit . . .

See *Fleming v. Verizon New York, Inc.,* 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005).  *Accord*

*Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.,* 2009 WL 3682458, at * 5 (S.D.N.Y. Oct. 25, 2009).[7]

House's EEOC charge focuses on one thing, his termination.  It neither mentions nor

remotely alludes to a purported hostile work environment.  Thus, if he is pressing a federal

hostile work environment claim, this Court lacks subject matter jurisdiction to adjudicate it.

> **b.     Wackenhut, Carbonaro, and Velati did not subject House to a hostile work environment**

House's hostile work environment claim, if he is pressing one, also fails on the merits.

Under federal and New York state law, a hostile work environment plaintiff must show that his

---

[7]     Holding:

Plaintiff's hostile work environment claim against St. Luke's was not included in Plaintiff's administrative filings and is dismissed as unexhausted. *Fleming,* 419 F. Supp. 2d at 464.  And, Plaintiff's claim does not fall within any of the three 'reasonably related' categories. *Jiggetts v. Diaz,* 2009 WL 749575, at *6 (S.D.N.Y. Mar. 20, 2009); *Alston v. Microsoft Corp.,* No. 08 Civ. 3547, 2009 WL 1116360, at *6 (S.D.N.Y. Apr. 27, 2009).  Plaintiff's hostile work environment claim is not, for instance, 'within the scope of the EEOC investigation,' *Jiggetts,* 2009 WL 749575, at *6, because, among other things, Plaintiff did not allege any facts in her EEOC Complaint that might suggest the existence of a hostile work environment, including racial or sexual harassment. *Hamilton v. Wilson,* No. 03 Civ. 5685, 2004 WL 169789, at *3 (S.D.N.Y. Jan. 28, 2004); *see also Fleming,* 419 F. Supp. 2d at 464 ("Plaintiff's EEOC Charge did not preserve her hostile work environment claim. The EEOC Charge makes no reference to a sexually hostile work environment. Rather, the EEOC Charge claims only ... discrimination[.]"); *Melendez v. Int'l Serv. Sys., Inc.,* No. 97 Civ. 8051, 1999 WL 187071, at *6 (S.D.N.Y. Apr. 6, 1999).

workplace was "permeated with 'discriminatory intimidation, ridicule, and insult,' that [was] 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993), (quotation marks and citations omitted); *see Bermudez*, 783 F. Supp. 2d at 578.  Courts examine the totality of the circumstances to determine whether an environment is hostile or abusive.  *Bermudez*, 783 F. Supp. 2d at 578.  The plaintiff must prove that the alleged misconduct created an environment that is both objectively and subjectively hostile, *Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 436 (2d Cir. 1999); *Bermudez*, 783 F. Supp. 2d at 578; *White v. Fuji Photo Film USA, Inc.,* 434 F. Supp. 2d 144, 154 (S.D.N.Y. 2006).  Plus, he must prove that the alleged hostile work environment was caused by animus towards the plaintiff "as a result of [his] membership in a protected class."  *Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper,* 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003) ("'An environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes.'").  *Bermudez*, 783 F. Supp. at 578-579 (quoting *Forts v. City of N.Y. Dep't of Corr.,* 2003 WL 21279439, at *4 (S.D.N.Y. June 4, 2003)).

Federal and New York State hostile work environment "claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency."  *Ennis v. Sonitrol Mgmt. Corp.,* 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006), (citations omitted).

The NYCHRL standard is somewhat less demanding.  It imposes liability for harassing conduct that falls short of severe.  But, even under that statute, "'petty, slight, or trivial inconvenience[s]' are not actionable."  *Kumaga v. NYC School Constr. Auth.,* 27 Misc.3d 1207(A) (N.Y. Sup. Ct. 2010) (quoting *Williams v. New York City Hous. Auth.,* 61 A.D.3d 62, 80

(1st Dep't 2009).

House's hostile environment claim, if he is pressing one, crumbles under that standard.

First, to the extent that he predicates his claim on Wackenhut's requirement that security officer's qualify to use firearms at a Long Island-based shooting range, House admits that (1) he does not know why Wackenhut chose that range; and (2) all Wackenhut security officers must use it.  Thus, House cannot prove that Wackenhut mandated the range due to race or age.  Plus, if the mandate is harsh, it is equally so for all security guards.  Accordingly, Wackenhut's decision to require guards to use the Long Island range is not justiciable.

As to the alleged joking about him sleeping on the job, House admits that he cannot identify who made the jokes.  Thus, he cannot prove that discriminatory animus motivated them.  Plus, on its face, such joking, which purportedly occurred just 5 or 6 times, is the type of petty, slight, or trivial inconvenience for which the anti-discrimination law is not addressed.

As to his contention that his relief sometimes arrived late, House admits that both black security officers and white security officers were tardy.  Thus, discriminatory animus was not an issue.  Plus, he can only identify one white security officer who relieved him late, and that occurred just 3 to 5 times during House's during House's entire time with Wackenhut.  Again, this is the type of petty, slight, or trivial inconvenience for which the anti-discrimination law is not addressed.

The same is true for House's contention that Wackenhut did not want security officers to take bathroom and lunch breaks.  Indeed, he admits he took such breaks when there was someone to hold his post.

In short, as a matter of law, House's hostile environment claim, if he is pressing one, cannot survive.

**4.      House's Retaliation Claim, if he has brought one, fails as a matter of law.**

In his Amended Complaint, House utters the word "retaliatory."  He alleges, however, no protected activity.

Perhaps he believes, as he contended to the Department of Homeland Security, that Wackenhut terminated him because he is a union member.  Such conduct, however, is actionable under none of the statutes under which he has sued.  Thus, his retaliation claim, if he is pressing one, fails as a matter of law.

**5.      Wackenhut and the FPS are not a single integrated enterprise.**

Evidently recognizing that his claims against Wackenhut are groundless, House attempts to hold Wackenhut responsible for the FPS's purported conduct, on the ground that are a single integrated enterprise.  Am. Compl. ¶ 10.  Not so.

In *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir. 1995), the Second Circuit adopted a four-part test "aimed at determining the degree of interrelationship between ... two entities" such that they might be considered to be a single employer.  Under the test, courts will not find single employer status absent evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* at 1240 (citation omitted).

Here, House contends that Wackenhut and the FPS are a single employer because (1) the FPS asked Wackenhut not to allow him to work on federal property; and (2) the organizations communicate with one another by electronic mail.  S.J. Ex. 1 [House Tr. 95:6 – Tr. 96:23].  His contentions, however, prove nothing.

To the contrary, it is undisputed that Wackenhut

- Wackenhut independently runs its organization;

- shares no employees with the FPS;

- maintains its own bank accounts and books;

- issues its own paychecks;

- uses its own human resources personnel to set employment policies for its employees;

-  decides who to hire, fire, and discipline;

- shares no managers with the FPS; and

- manages its own finances.

Thus, the conclusion is ineluctable that the Court should not treat Wackenhut and the FPS as one.

**B.     House's defamation claim fails as a matter of law.**

A defamation plaintiff must prove that the defendant made a false statement to a third party that tends to "'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" *Foster v. Churchill,* 87 N.Y.2d 744, 751 (N.Y. 1996) (citations omitted).

Truth is an absolute defense. *Ciuffetelli v. Apple Bank For Savings*, No. 99-7741, 2000 WL 340388, at *3 (2d Cir. Mar. 30, 2000). "Moreover, truth need not be established to an extreme literal degree.  Provided that the defamatory material on which the action is based is substantially true (minor inaccuracies are acceptable), the claim to recover damages for libel must fail." *Love v. William Morrow & Co.,* 193 A.D.2d 586, 587 (2d Dep't 1993), (citation omitted).

Also, a qualified privilege extends to false defamatory statements made to people with a

"common interest in the subject matter." *Foster v. Churchill,* 665 N.E.2d 153, 157, 87 N.Y.2d 744, 751 (N.Y. 1996).  It applies to "evaluations or statements of employees made by their superiors"  *Shamley v. ITT Corp.*, 869 F.2d 167, 173 (2d Cir. 1989); *see Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001), ("Communications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the [common interest] privilege.").  And, the plaintiff can overcome it only by proving "malice on the part of the superiors." *Shamley*, 869 F.2d at 173.

House contends that Velati and Carbonaro defamed him by "falsely informing James Isom, Senior Vice President of Wackenhut Services, Inc., that [House] was 'sleeping on post' and 'this was not the first time that House was observed sleeping on post by inspector Clarke[]' on the job and recommended dismissal on December 28, 2009."  But, at a minimum, that statement is substantially correct.  Moreover, even if it is not, the undisputed evidence establishes that Velati and Carbonaro uttered it in good faith and without malice.

Thus, House's defamation claim, like his previously discussed claims, must fail.

**IV.     Conclusion**

This case has been pending for well over a year.  And while aging is a happy process, it is not a desirable aspect of judicial proceedings.  It is now time to bring this case to a merciful conclusion.

House has raised no issues of material fact.  And, Wackenhut, Carbonaro, and Velati are entitled to a judgment in its favor as a matter of law.  So, they submit that the Court should grant their Motion, in its entirety.

Respectfully submitted,

David Wynn (DW8660)                           By: _____ /s/ _____
Shawanna Johnson (SJ5391)                     Henry Morris, Jr. *(*Admitted *Pro Hac Vice*)
ARENT FOX LLP                                 ARENT FOX LLP
1675 Broadway                                 1050 Connecticut Ave., N.W.
New York, NY 10019                            Washington, D.C. 20036
Telephone: (212) 484-3900                     Telephone:  (202) 857-6000
Facsimile:  (212) 484-3990                    Facsimile:  (202) 857-6395
*david.wynn@arentfox.com*                     *morris.henry@arentfox.com*
*johnson.shawanna@arentfox.com*

*Attorneys for Wackenhut Services, Inc., James*
*Carbonaro, and Renato Velati*

Dated:  February 1, 2012