UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JEFFREY HOUSE,

                Plaintiff,

        v.

WACKENHUT SERVICES, INC., LT.
RENATO VELATI, OFFICER CARBANARO,
JANET NAPOLITANO (SECRETARY OF
HOMELAND SECURITY),

                Defendants.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

10 Civ. 9476 (CM) (FM)


**MEMORANDUM OF LAW OF DEFENDANT JANET NAPOLITANO, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel. No. (212) 637-2697
Fax No. (212) 637-2686

ALICIA M. SIMMONS
Assistant United States Attorney
    **-** Of Counsel **-**

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Federal Protective Service and Wackenhut. . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Plaintiff's Employment With Wackenhut. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    The December 4, 2009 Incident. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    Plaintiff's Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.    Plaintiff's Union Grievance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.    Plaintiff's Complaint to FPS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.    Plaintiff's EEO Complaint Against Wackenhut. . . . . . . . . . . . . . . . . . 8

    E.    Plaintiff's Lawsuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    PLAINTIFF FAILED TO EXHAUST THE AVAILABLE ADMINISTRATIVE
    REMEDIES FOR HIS TITLE VII AND ADEA CLAIMS. . . . . . . . . . . . . . . . . . . . . . 9

II.    PLAINTIFF IS NOT A GOVERNMENT EMPLOYEE FOR
    PURPOSES OF TITLE VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.    THERE IS NO TRIABLE ISSUE OF FACT PRECLUDING THE ENTRY OF
    JUDGMENT IN FAVOR OF THE GOVERNMENT FOR PLAINTIFF'S TITLE VII
    AND ADEA CLAIMS FOR DISPARATE TREATMENT. . . . . . . . . . . . . . . . . . . . 16

    A.    There Is No Evidence Supporting an Inference of Discrimination. . . . . . . . . . . 17

    B.    The Government Has Proffered Legitimate, Nondiscriminatory Reasons for
        Requesting Plaintiff's Removal From Federal Facilities . . . . . . . . . . . . . . . . . . 19

IV.    PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS AS
    A MATTER OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.    PLAINTIFF HAS NOT ARTICULATED A RETALIATION CLAIM AGAINST
    THE GOVERNMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

VI.    PLAINTIFF'S STATE LAW AND COMMON LAW CLAIMS AGAINST THE GOVERNMENT WARRANTS DISMISSAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### CASES

*Ayala v. Metro. One Sec. Sys., Inc.*,
No. 11 Civ. 233 (JG) (ALC) 2011 WL 1486559 (E.D.N.Y. Apr. 19, 2011). .................. 14

*Baldwin County Welcome Crt. v. Brown*,
466 U.S. 147 (1994)........................................................................ 10

*Belgrave v. Pena*,
254 F.3d 384 (2d Cir. 2001)............................................................. 10

*Bickerstaff v. Vassar College*,
196 F.3d 435 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000). .................................. 17

*Brown v. Gen. Serv. Admin.*,
425 U.S. 820 (1976).......................................................................... 24

*Chambers v. TRM Copy Ctrs. Corp.*,
43 F.3d 29 (2d Cir. 1994)................................................................. 16

*Cmty. for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989)......................................................................... 13

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000)............................................................. 23

*Dill v. Pennsylvania*,
3 F. Supp. 2d 583 (E.D. Pa. 1998). ................................................. 23

*Ennis v. Sonitrol Mgmt. Corp.*,
No. 02-CV-9070 (TPG), 2006 WL 177173 (S.D.N.Y. Jan. 25, 2006). .......................... 22

*Gulino v. N.Y. State Educ. Dep't*,
460 F.3d 361 (2d Cir. 2006)....................................................... 13, 14

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993)............................................................................ 21

*House v. Wackenhut Serv., Inc.*,
No. 10 Civ. 9476 (CM), 2011 WL 6326100 (S.D.N.Y. Dec. 16, 2011)............................ 9

*Jimenez v. City of New York*,

605 F. Supp. 2d 485 (S.D.N.Y. 2009)............................................................................ 20

*Johnson v. Flowers Indus.*,
814 F.2d 978 (4th Cir. 1987). .................................................................................... 15

*Johnson v. Peake*,
634 F. Supp. 2d 27 (D.D.C. 2009). ............................................................................ 10

*Knight v. U.S. Fire Ins. Co.*,
804 F.2d 9 (2d Cir. 1986)............................................................................................ 20

*Legeno v. Douglas Elliman*,
311 F. App'x 403 (2d Cir. 2009). ............................................................................... 12

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*,
274 F.3d 683 (2d Cir. 2001)........................................................................................ 10

*Magadia v. Napolitano*,
06 Civ. 14386  2009 WL 510739 (S.D.N.Y. Feb. 26, 2009). ...................................... 21

*Marshall v. nat'l Assoc. of Letter Carriers*,
00 Civ. 3167 (LTS) 2003 WL 223563 (S.D.N.Y. Feb. 3, 2003). ................................. 24

*McDonnell-Douglas Corp. v. Green*,
411 U.S. 792 (1973)..................................................................................................... 16

*McGullam v. Cedar Graphics, Inc.*,
609 F.3d 70 (2d Cir. 2010).......................................................................................... 22

*Meiri v. Dacon*,
759 F.2d 989 (2d Cir. 1985)......................................................................................... 18

*Miller v. Int'l Tel. & Tel. Corp.*,
755 F.2d 20 (2d Cir. 1985)........................................................................................... 10

*Moskowitz v. N.Y. State Dep't of Health*,
01 Civ. 4859, WL 34680657 (E.D.N.Y. 2002)............................................................. 13

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992)..................................................................................................... 12

*O'Connor v. Davis*,
126 F.3d 112 (2d Cir. 1997)......................................................................................... 13

*Pietras v. Board of Fire Comm'rs of Farmingville Fire Dist.*,

iv

180 F.3d 468 (2d Cir. 1999)........................................................................................ 12

*Randall v. Potter*,
01 Civ. 2097  2004 WL 439491 (S.D.N.Y. Mar. 9, 2004). ............................................ 24

*Reeves v. Sanderson Plumbing Prod.*,
530 U.S. 133 (2000)....................................................................................................... 17

*Rivera v. Heyman*,
157 F.3d 101 (2d Cir. 1998)........................................................................................... 24

*Salamon v. Our Lady of Victory Hosp.*,
514 F.3d 217 (2d Cir. 2008)........................................................................................... 12

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*,
183 F.3d 155 (2d Cir. 1999)........................................................................................... 23

*Schnabel v. Abramson*,
232 F.3d 83 (2d Cir. 2000)............................................................................................. 17

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993)................................................................................................. 17, 19

*Stevens v. New York*,
No. 09 Civ. 5237 (CM), 2011 WL 3055370 (S.D.N.Y. July 20, 2011)..................... 17, 18

*Stewart v. INS*,
762 F.2d 193 (2d Cir. 1985)........................................................................................... 10

*Sullivan v. Newburgh Enlarged Sch. Dist.*,
281 F. Supp. 2d 689 (S.D.N.Y. 2003)............................................................................ 22

*Takacs v. Fiore*,
473 F. Supp. 2d 647 (D. Md. 2007). .............................................................................. 14

*Teachout v. N.Y. City Dep't of Educ.*,
04 Civ.945 (GEL), 2006 WL 452022 (S.D.N.Y. Feb. 22, 2006)................................... 18

*Tx. Dep't of Cmte. Affairs v. Burdine*,
450 U.S. 248 (1981)....................................................................................................... 17

*United States v. City of N.Y.*,
359 F.3d 83 (2d Cir. 2004)............................................................................................. 13

v

*Williams v. R.H. Donnelley, Corp.*,
    368 F.3d 123 (2d Cir. 2004).......................................................................................... 16


*Yarde v. Good Samaritan Hospital*,
    360 F. Supp. 2d 552 (S.D.N.Y. 2005)........................................................................... 18

## STATUTES

42 U.S.C. §§ 2000e........................................................................................................ 1, 12, 13

28 U.S.C. § 1491............................................................................................................ 25

29 C.F.R. § 1614.105....................................................................................................... 10, 11

29 C.F.R. § 1614.106....................................................................................................... 11

29 C.F.R. 1614.110.......................................................................................................... 10

Defendant Janet Napolitano, Secretary of the Department of Homeland Security ("DHS" or the "Government"), by her attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum in support of her motion for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Jeffrey House ("plaintiff"), who was employed by Wackenhut Services Inc. ("Wackenhut") as a security guard stationed at federal facilities, alleges that the Government discriminated against him on the basis of race and age, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq*. and the Age Discrimination in Employment Act, (the "ADEA"), 29 U.S.C. § 621 et seq.  Plaintiff also claims that the Government subjected him to a hostile work environment and unlawfully retaliated against him.  Finally, he claims that the Government breached a contract with Wackenhut concerning the provision of security services at facilities owned or leased by the United States General Services Administration ("GSA").

As a threshold matter, plaintiff's discrimination claims should be dismissed because plaintiff failed to timely seek EEO counseling or file an EEO complaint with the Government after his removal.  Even if plaintiff had properly exhausted the available administrative remedies, the Government is not liable to him for his claims that his termination was discriminatory because the Government is not plaintiff's employer for purposes of Title VII and the ADEA.

The Government is also entitled to summary judgment on plaintiff's disparate treatment claims.  Plaintiff cannot make out a *prima facie* case of discrimination against the Government under Title VII or the ADEA.  Even assuming plaintiff could make out a *prima facie* case of discrimination, plaintiff cannot show that DHS's legitimate, non-discriminatory reasons for its action was a pretext for unlawful discrimination.  Plaintiff admits that he was using a personal computer

to play a card game while on duty, which, under the contractual agreement between FPS and Wackenhut, is ground for a Wackenhut security guard's immediate removal from federal facilities. Accordingly, plaintiff's disparate treatment claims should be dismissed in their entirety.

Plaintiff's hostile work environment claim and retaliation claim also fail. Plaintiff has no evidence of acts by the Government that contributed to a hostile work environment, much less acts sufficiently severe and pervasive to support a hostile work environment claim. Plaintiff's retaliation claim against the Government is meritless because plaintiff has no evidence that he engaged in protected activity of which the Government was aware.

Finally, plaintiff's state law claims against the Government, under New York Executive Law § 296, and New York Civil Rights Law § 40-c, and his common law breach of contract claim against the Government should be dismissed because Title VII provides the exclusive remedy for alleged discrimination in the course of federal employment.

For these reasons, the Court should grant the Government's summary judgment motion.

## STATEMENT OF FACTS

### A.    The Federal Protective Service and Wackenhut

The Federal Protective Service ("FPS") is the component of DHS that is responsible for protecting federally owned or leased facilities. *See* Declaration of Rafael Bou III ("Bou Decl.") ¶ 2. FPS's mission is to provide a safe environment in which federal agencies can conduct their business without fear of crime, violence or disorder. *Id.*

Wackenhut contracts with FPS to provides security services at federally owned or leased facilities in New York City. *See* Deposition Transcript of Jeffrey House on Sept. 29, 2011 ("Pl. Tr."), the relevant pages of which are attached as Ex. A to the Declaration of Alicia M. Simmons,

2

dated February 1, 2012 ("Simmons Decl."), at 48, 55. The contract between Wackenhut and FPS (the "Contract") includes a Statement of Work, listing the specific services to be provided by Wackenhut. Statement of Work, attached as Ex. B to Bou Decl. Pursuant to the Contract, Wackenhut is required to "provide and maintain all management, supervision, manpower, training, equipment, supplies, licenses, permits, certificates, insurance, pre-employment screenings, reports and files necessary to accomplish security guard services" as described in the contract. *See id.* at section 1.2(B). As set forth in the Contract, Wackenhut is responsible for "ensur[ing] that [its] employees realize the importance of their role, and perform their duties courteously and professionally at all times." *Id.* at section 1.3(B).

Wackenhut, and not the Government, employs the security guards, termed protective security officers ("PSO"), who provide security services at the federal facilities covered under the Contract. Pl. Tr. 74; Bou Decl. ¶ 9. The Government does not pay salaries to the PSOs. Bou Decl. ¶ 11. Although the Contract sets forth the minimum qualifications that all PSOs must satisfy, Wackenhut decides which PSOs it hires. Statement of Work, Bou Decl. Ex. B, at section 4.1; Pl. Tr. 73-74; Bou Decl. ¶ 10. FPS does not participate in the hiring process administered by Wackenhut when making job offers to prospective PSOs. Bou Decl. ¶ 10.

While Wackenhut is responsible under the Contract for maintaining its employees' work performance standard and for disciplining its employees, the Government has a right to ensure that Wackenhut employees comply with the Contract requirements. Statement of Work, Bou Decl. Ex. B, at section 5.2(A). Thus, under the Contract, FPS is entitled to "use all methods deemed necessary to ensure that the Contractor's employees are in a constant state of awareness and readiness." *Id.* These methods include, among other techniques, "uniformed or undercover surveillance by FPS

staff" of Wackenhut security officers' work performance  *Id.*; *see also* Declaration of Alfredo Clarke ("Clarke Decl.") ¶ 3.

Under the Contract, FPS has the authority to ask that Wackenhut remove PSOs from federal facilities, and Wackenhut is required to comply with such a request; however, nothing in the Contract gives the Government the authority to terminate a PSO's employment relationship with Wackenhut.  Bou Decl. ¶ 15.  Specifically, the Contract provides that FPS

> may request the Contractor to immediately remove any employee *from any or all locations where the contractor has contracts with the Federal Protective Service* should it be determined that the employee has been disqualified for either employment suitability, performance suitability, or security reasons, or who is found to be unfit for performing security duties during his/her tour of duty. The Contractor must comply with these requests in a timely manner.

Statement of Work, Bou Decl. Ex. B, at section 16(A)(3).

The Contract identifies thirty-six "actions, behaviors or conditions [that] are cause for immediate removal from performing on the task order."  *Id.* at section 16(B).  The actions include, among other things, "(3) using personal electronic equipment such as . . . computers . . . while on duty" and "(22) neglecting duties by sleeping while on duty . . . ."  *Id.* at section 16(B)(3), (22).

Under the Contract, FPS may request that Wackenhut remove a FPS from all federal facilities owned or leased by the GSA.  Bou Decl. ¶ 15; Statement of Work, Bou Decl. Ex. B, at section 16(A)(3).  Wackenhut may dispute FPS's removal request.  Statement of Work, Bou Decl. Ex. B, at section 16(C).  The FPS Contracting Officer under the Contract issues the final determination regarding whether the Government will exercise its contractual right and request that Wackenhut

remove a PSO from working at federal facilities. *Id.* at section 16(C). However, FPS does not have the authority to terminate a PSO's employment with Wackenhut. Bou Decl. ¶ 15.

## B.   Plaintiff's Employment With Wackenhut

Plaintiff applied to Wackenhut for a job and began his employment with Wackenhut as a PSO on November 1, 2007. Letter dated Nov. 1, 2007, attached as Ex. B to Simmons Decl.; Application for Employment, attached as Ex. C to Simmons Decl.; Pl. Tr. 39-40, 42. Plaintiff was also a member of the Local One Security Officer's Union, which represented PSOs at Wackenhut. Pl. Tr. 285, 453. As a PSO, plaintiff's job responsibilities included securing and monitoring the buildings to which he was assigned. Pl. Tr. 119.

During the majority of his tenure at Wackenhut, plaintiff was assigned to cover posts[1] at 201 Varick Street, a Level IV federal facility.[2] Pl. Tr. 49, 213; *see also* Clarke Decl. ¶ 6, 9. Wackenhut provides security services at 201 Varick Street pursuant to its Contract with FPS. Pl. Tr. 66; Statement of Work, Bou Decl. Ex. B, at section 3.1(A).

## C.   The December 4, 2009 Incident

On December 4, 2009, plaintiff was assigned to the post King Street Booth number one at 201 Varick Street. Pl. Tr. 201-02. At that post, plaintiff sat on a milk crate and had a personal

---

[1]  A "post" is an area within the federal facility for which a Wackenhut security guard is responsible for providing security services. Bou Decl. ¶ 18.

[2]  A Level IV facility typically has 451 or more federal employees housed in more than 150,000 square feet and has a high volume of public contact. Clarke Decl. ¶ 7. The tenant agencies in a Level IV facility may include high-risk law enforcement agencies, courts, judicial officers and offices housing highly sensitive government records. *Id.* A Level IV facility is the second highest security level for a federal building. Id. ¶ 6. Any unacceptable conduct by a contractor security guard at his post is serious, but the seriousness of the conduct is augmented at a Level IV facility. *Id.* ¶ 8.

computer placed on a second milk crate directly in front of him.  Pl. Tr. 275-76.  It is undisputed that, early that morning, plaintiff used the computer for approximately one hour, to play a card game.  Pl. Tr. 215-16.  When FPS Inspector Alfredo Clarke ("Inspector Clarke") approached King Street Booth number one at approximately 7:00 a.m., he observed an active card game on plaintiff's computer. *See* Clarke Decl. ¶ 9; Post Inspection Form, attached as Ex. A to Clarke Decl.  Inspector Clarke also observed plaintiff sleeping at his post.  Clarke Decl. ¶ 9; Post Inspection Form, Clarke Decl. Ex. A.

On December 4, 2009, Inspector Clarke completed a Post Inspection Form which noted, among other things, that plaintiff had at his post a laptop with an active card game.  Post Inspection Form, Clarke Decl. Ex. A.  The Post Inspection Form also noted Inspector Clarke's observation that plaintiff was sleeping at his post on December 4, 2009.  *Id.*  Inspector Clarke submitted the Post Inspection Form to Area Commander Rafael Bou III ("Commander Bou") on December 4, 2009.  Clarke Decl. ¶ 11.  Commander Bou reviewed the Post Inspection Form, signed it and forwarded it to the Contracting Officer on December 17, 2009.  Bou Decl. ¶ 19; Post Inspection Form, Bou Decl. Ex. C.

Inspector Clarke and Commander Bou submitted to Carol DiCicco ("DiCicco"), the FPS Contracting Officer under the Contract, a request that plaintiff be removed from working at federal facilities under the Contract (the "Request").  Bou Decl. ¶ 20; Clarke Decl. ¶ 12; Request for Removal From Service Under DHS/FPS Contracts, attached as Ex. D to Bou Decl.  The Request referenced plaintiff's conduct on December 4, 2009, including the presence at his post of a personal computer displaying an active card game.  Request, Bou Decl. Ex. D; Bou Decl. ¶ 20.  Plaintiff's use of a personal computer to play a card game at his post was an independent basis for the Request.  Bou Decl. ¶ 20.  The Request explained that FPS relies on Wackenhut's PSOs "to be the 'eyes and

6

ears' to accomplish [its] security mission," and that if contract PSOs do not perform their duties as expected under the Contract, "the consequences could be damage to or loss of federal property, serious bodily injury to personnel or even loss of life." Request, Bou Decl. Ex. D. The Request stated that, in light of plaintiff's conduct on December 4, 2009, which includes his use of a personal computer while on duty, plaintiff's removal from federal facilities would be "in the best interest of the Government." *Id.*

On January 26, 2010, DiCicco forwarded to Wackenhut a request that plaintiff be removed from working at federal facilities under the Contract. *See* Email dated Jan. 26, 2010, attached as Ex. D to Simmons Decl.; Request for Removal From Service Under DHS/FPS Contracts, attached as Ex. D to Bou Decl. On January 27, 2010, Wackenhut terminated plaintiff's employment. Letter dated Jan. 27, 2010, attached as Ex. E to Simmons Decl.

### D.   Plaintiff's Allegations

#### 1.   Plaintiff's Union Grievance

On January 31, 2011, the Union submitted to Wackenhut two grievances concerning the discipline imposed on plaintiff arising out of the events on December 4, 2009. *See* Grievance Forms, attached as Exs. F and G to Simmons Decl. The grievances do not reference and are not addressed to the Government, Commander Bou or Inspector Clarke. *Id.*

#### 2.   Plaintiff's Complaint to FPS

On February 2, 2010, plaintiff complained to FPS Supervisory Special Agent John Crowe ("Agent Crowe") that he had been terminated because of his union involvement, and because Inspector Clarke had written a false Post Inspection Report at the direction of Commander Bou. Report of Investigation ("ROI") Number ("No.") 001, attached as Ex. H to Simmons Decl.; Affidavit

7

dated Feb. 8, 2010, attached as Ex. I to Simmons Decl.; Pl. Tr. 451-52.  Plaintiff did not mention to

Agent Crowe that he believed his firing had been based on his age or race.  Pl. Tr. 453.  Agent Crowe

forwarded plaintiff's complaint to the Joint Intake Center at ICE's Office of Professional

Responsibility on February 8, 2010.  ROI 001, Simmons Decl. Ex. H.  Senior Special Agent Kevin

Barry ("Agent Barry"), the case officer in ICE's Office of Professional Responsibility who

investigated plaintiff's complaint, interviewed plaintiff on May 21, 2010.  *See* ROI No. 002, attached

as Ex. J to Simmons Decl.  During this interview, plaintiff stated to Agent Barry that he believed that

he had been terminated based on his involvement in the union.  *Id.*; Affidavit dated May 21, 2010,

attached as Ex. K to Simmons Decl.  Again, plaintiff did not claim during the interview that he had

been terminated on the basis of his race or age. ROI No. 002, Simmons Decl. Ex. J ; Affidavit dated

May 21, 2010, Simmons Decl. Ex. K.

   3. Plaintiff's EEO Complaint Against Wackenhut

   On July 6, 2010, plaintiff submitted an Equal Employment Opportunity ("EEO") complaint

to the Equal Employment Opportunity Commission ("EEOC").  Charge of Discrimination, attached

as Ex. L to Simmons Decl.  The EEO complaint referenced only Wackenhut as the employer that

allegedly discriminated against him.  *Id.*  Notice of plaintiff's EEO complaint was sent only to

Wackenhut.  Notice of Charge of Discrimination, attached as Ex. M to Simmons Decl.; Declaration

of Gerald Rock ("Rock Decl.") ¶ 5-9.

**E.** **Plaintiff's Lawsuit**

   Plaintiff initiated this action by filing a Complaint against the Government, FPS, the United

States of America, Commander Bou and Inspector Clarke, as well as Wackenhut and several of its

employees.  *See* Complaint dated Dec. 21, 2010, attached as Ex. N to Simmons Decl.  Plaintiff filed

an Amended Complaint which alleges that the Government discriminated against him because of his age and race, in violation of Title VII and the ADEA, by terminating plaintiff's employment and failing to produce the security tapes at the Kings Street Booth number one. Amended Complaint dated July 12, 2011 ("Am. Compl.") (Docket Entry No. 19) ¶ 27 . Plaintiff also alleges in the Amended Complaint that the Government "harass[ed]" and "lodg[ed] frivolous disciplinary charges against" plaintiff, thereby creating a hostile work environment. Am. Compl. ¶ 24.

Albeit less clearly, the Amended Complaint appears to allege that the Government engaged in "retaliatory conduct" against plaintiff. Am. Compl. ¶ 29; *see also House v. Wackenhut Serv., Inc.*, No. 10 Civ. 9476 (CM), 2011 WL 6326100, at *2 (S.D.N.Y. Dec. 16, 2011) (identifying retaliation claim in Amended Complaint). Plaintiff also appears to raise a common-law breach of contract claim against the Government arising out of his alleged termination. *House*, 2011 WL 6326100, at *2 ("Count V asserts a claim for breach of contract, and is seemingly asserted against all defendants.").[3]

## ARGUMENT

## I.   PLAINTIFF FAILED TO EXHAUST THE AVAILABLE ADMINISTRATIVE REMEDIES FOR HIS TITLE VII AND ADEA CLAIMS

Plaintiff failed to pursue his administrative remedies for the Government's alleged discriminatory conduct and therefore he is barred from pursuing his Title VII and ADEA claims against the Government. Under Title VII and the ADEA, "a litigant *must* exhaust available

---

[3]   The Amended Complaint withdrew plaintiff's tort claims against the United States of America (the "United States"), FPS, the Government, Inspector Clarke and Commander Bou, which were previously set forth in the Complaint. *See* Revised Civil Case Management Plan dated June 24, 2011 (Docket Entry No. 17) ¶ 2. The Amended Complaint also withdrew the Title VII claim against FPS and the United States set forth in the Complaint. *Id.*

administrative remedies in a timely fashion" as a prerequisite to gaining access to the federal courts. *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996); *see also Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001). The exhaustion requirement provides the agency with notice of an employee's complaint and the opportunity to investigate the matter and take remedial action, where necessary. *Stewart v. INS*, 762 F.2d 193, 198 (2d Cir. 1985). "The purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Miller v. Int'l Tel. & Tel. Corp.,* 755 F.2d 20, 26 (2d Cir. 1985).

A plaintiff may not file an action in federal court until the administrative EEO process has been completed and fully exhausted. *See* 29 C.F.R. § 1614.110. Courts must strictly adhere to such procedural requirements for gaining access to the federal courts; these timing requirements "are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Crt. v. Brown*, 466 U.S. 147, 152 (1994). Accordingly, if a plaintiff fails to properly exhaust the administrative remedies available, he is barred from seeking relief in federal court. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).

An aggrieved person who believes he has been discriminated against by a federal agency on the basis of his race or age "must initiate contact with a Counselor within 45 days of" the discriminatory act. 29 C.F.R. § 1614.105(a)(1). "[U]nder the longstanding EEOC interpretation of § 1614.105(a)(1), the requirement of 'initiat[ing] contact with a Counselor' is satisfied when an employee initiates contact with an agency official logically connected with the EEO process and exhibits an intent to begin the EEO process." *Johnson v. Peake*, 634 F. Supp. 2d 27, 31 (D.D.C. 2009). If the Counselor is unable to resolve the aggrieved person's complaints during the counseling

10

session, the aggrieved person must file a written complaint with the agency that allegedly discriminated against the complainant.  29 C.F.R. §§ 1614.105(d), 1614.106(a).

Here, plaintiff failed to exhaust his administrative remedies pursuant to 29 C.F.R. § 1614.105(a)(1) because he did not contact an agency EEO Counselor about FPS's alleged discrimination, let alone file an administrative EEO complaint with the agency.  The Government does not have any record of an EEO complaint filed with DHS by plaintiff.  Rock Decl. ¶ 5. Furthermore, the Government does not have any record that plaintiff contacted an EEO counselor at DHS.  *Id.* ¶ 6.  Because plaintiff failed to exhaust the available administrative remedies with the Government, DHS was deprived of the opportunity to resolve plaintiff's discrimination claims prior to this federal litigation.

Plaintiff presumably will argue that the complaint he filed with the EEOC served to exhaust his administrative remedies.  His EEOC complaint, however, identified only Wackenhut as an alleged discriminator, and not the Government.  Charge of Discrimination, Simmons Decl. Ex. L. Indeed, in his Charge of Discrimination, plaintiff named only Wackenhut as the employer who allegedly discriminated against him because, as plaintiff explained, the form asked "who was your employer and that's what I put down.  My employer."  *Id.*; Pl. Tr. 388-89.

Moreover, the Government did not receive notice of the EEOC complaint.  *See* Notice of Charge of Discrimination, Simmons Decl. Ex. L; Rock Decl. ¶ 5.  Only Wackenhut received such notice.  *See* Notice of Charge of Discrimination, attached as Ex. M to Simmons Decl.  The Government simply had no knowledge of plaintiff's EEO complaint prior to the commencement of this litigation.  Rock Decl. ¶ 9.  In other words, the Government never had notice of plaintiff's discrimination claims before he filed suit in this Court.

11

Plaintiff may also seek to argue that he pursued his administrative remedies when he complained about his termination to two Government employees, but in neither instance did he claim that his termination was on account of his age or race. Plaintiff only spoke to two Government employees about his termination: Agent Crowe and Agent Barry. Pl. Tr. 452; Affidavit, Simmons Decl. Ex. K. When he spoke to Agent Crowe, plaintiff did not claim that he had been terminated as a result of race or age discrimination because "it didn't cross [his] mind at the time." Pl. Tr. 453. Nor did plaintiff state during his interview with Agent Barry that his race or his age played a factor in his termination; plaintiff only claimed that he was terminated because of his union involvement. Affidavit, Simmons Decl. Ex. K; ROI #002, Simmons Decl. Ex. J.

In sum, plaintiff bypassed the conciliation process contemplated by Title VII and the ADEA; his Title VII and ADEA claims against the Government should therefore be dismissed.

## II.   PLAINTIFF IS NOT A GOVERNMENT EMPLOYEE FOR PURPOSES OF TITLE VII

Even if plaintiff had properly exhausted his administrative remedies, his Title VII and ADEA claims against the Government fail as a matter of law because plaintiff is not an "employee" of the Government. Title VII and the ADEA, which prohibit discrimination against employees, define "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f); *see Legeno v. Douglas Elliman, LLC*, 311 F. App'x 403, 405 (2d Cir. 2009) (ADEA); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008). "Courts have assumed . . . that in using the term employee Congress had in mind the conventional master-servant relationship as understood by common-law agency doctrine." *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992)).

12

In order for plaintiff to proceed against the Government in this case, he must establish that DHS was his "employer" under the governing statutes.  The Second Circuit applies a thirteen-factor test developed by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), to determine whether a plaintiff is an "employee" of a defendant under Title VII and the ADEA. *Salamon*, 514 F.3d at 226-27.  Before applying the *Reid* test, however, "a prerequisite to considering whether an individual is [an employee] . . . is that the individual have been hired [by the alleged employer] in the first instance." *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997); *United States v. City of N.Y.*, 359 F.3d 83, 91-92 (2d Cir. 2004).   Additionally, a court must determine "whether [a plaintiff] has received direct or indirect remuneration from the alleged employer" prior to reaching the *Reid* analysis.  *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 372 (2d Cir. 2006) (internal quotations omitted); *City of N.Y.*, 359 F.3d at 91-92.  Whether a plaintiff is an "employee" of the defendant under Title VII and the ADEA is a question of law.  *Moskowitz v. N.Y. State Dep't of Health*, No. 01 Civ. 4859 (JS), 2002 WL 34680657, at *5 n.2 (E.D.N.Y. Jul. 30, 2002).

Here, plaintiff is not an "employee" of the Government because the Government did not hire or provide remuneration to plaintiff.  Wackenhut, and not the Government, presented plaintiff with an offer of employment.  Letter dated Nov. 1, 2007, Simmons Decl. Ex. B.  Wackenhut, and not the Government, paid plaintiff's salary and provided plaintiff's employment benefits, including his health and welfare benefits.  Bou Decl. ¶ 11; Letter dated Nov. 1, 2007, Simmons Decl. Ex. B.

Indeed, plaintiff admits that, at the time he worked for Wackenhut, he was not an employee of the Government.  Pl. Tr. 46.  At his deposition, plaintiff testified, "I never worked for the government.  Not at that time."  *Id.*; *see id.* ("That's correct – well, we worked for government

13

contracts.  Did I hold a GSA rating, no.").  Further, on his EEOC complaint, plaintiff listed only Wackenhut, and not the Government, as his employer.  *See* EEO Complaint, Simmons Decl. Ex. M; *see also* Pl. Tr. 388-89.

Despite his admissions, plaintiff nonetheless contends that the Government was his employer because Wackenhut and the Government operate as a "single integrated enterprise."  Am. Compl. ¶ 10.  He bases that allegation on three facts, none of which creates a genuine dispute as to whether the Government was his employer.  First, plaintiff claims that Inspector Clarke confers with Lieutenant Lopez, Wackenhut's Contract Performance Monitor, on various matters.  Pl. Tr. 89. Second, plaintiff references Commander Bou's recommendation that Wackenhut not allow plaintiff to work at federal sites.  Pl. Tr. 95-96.  Third, plaintiff claims that Wackenhut and the Government "communicate via e-mail."  Pl. Br. 96.

The Second Circuit applies a four-factor test to determine whether two entities may be considered a "single or joint employer" for Title VII and ADEA purposes.  *Gulino*, 460 F.3d at 378. The four factors include (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control.  *Id.*  A finding that two separate entities constitute a single employer is reserved for "extraordinary circumstances." *Ayala v. Metro One Sec. Sys., Inc.*, No. 11 Civ. 233 (JG) (ALC), 2011 WL 1486559, at *4 (E.D.N.Y. Apr. 19, 2011) (internal quotations omitted).  "In this Circuit, this analysis has been confined to two corporate contexts: first, where the plaintiff is an employee of a wholly-owned corporate subsidiary; and second, where the plaintiff's employment is subcontracted by one employer to another, formally distinct, entity."  *Giulino*, 460 F.3d at 378 (footnotes omitted); *cf. Takacs v. Fiore*, 473 F. Supp. 2d 647, 656 (D. Md. 2007) ("Integration is usually found between a parent and a subsidiary, and even

14

then only in extraordinary circumstances.") (quoting *Johnson v. Flowers Indus.*, 814 F.2d 978, 981 (4th Cir. 1987)).

Here, Wackenhut and the Government do not constitute a single and joint employer. The Government clearly is not a subsidiary of Wackenhut. Nor is there a contractor-subcontractor relationship between Wackenhut and the Government. As discussed *supra*, Wackenhut did not subcontract plaintiff's employment to the Government; the Government did not hire plaintiff or pay plaintiff's remuneration. Letter dated Nov. 1, 2007, Simmons Decl. Ex. B; Bou Decl. ¶ 11.

Moreover, all of the factors in the "single or joint employer" test weigh in favor of finding that the Government and Wackenhut are not a single employer. First, the Government and Wackenhut do not have interrelated operations. *See, e.g.,* Bou Decl. ¶ 11 (Wackenhut issues paychecks for PSOs), ¶ 12 (no shared bank accounts); Statement of Work, Bou Decl. Ex. B, at sections 23(A) (Wackenhut maintains personnel records for PSOs), section 25.1 (separate defined responsibilities for Government and Wackenhut officials under the Contract).

Second, Wackenhut manages the labor relations of its security officers. Wackenhut and the Government have separate and distinct work forces. *See* Bou Decl. ¶¶ 9-11; Statement of Work, Bou Decl. Ex. B, at sections 8(A), 15.3(D), 16(B), 17.2-3(A), 23(A).

Significantly in that regard, the Government does not participate in Wackenhut's hiring process for selecting PSOs. Bou Decl. ¶ 10. The Government also does not have the authority to terminate a Wackenhut PSO. *Id.* Although, pursuant to the Contract, the Government can direct Wackenhut to remove a Wackenhut PSO from working at federal facilities, it cannot direct Wackenhut to terminate the employment of a Wackenhut PSO. *Id.*

15

Third, Wackenhut and the Government have distinct management divisions.  Bou Decl. ¶ 16.

Last, Wackenhut does not own or have any financial control over the Government.  Bou Decl. ¶¶ 12,

17.

Accordingly, because the Government is not plaintiff's employer for purposes of Title VII

and the ADEA, the Government is entitled to summary judgment on Count I of the Amended

Complaint.

## III.   THERE IS NO TRIABLE ISSUE OF FACT PRECLUDING THE ENTRY OF JUDGMENT IN FAVOR OF THE GOVERNMENT FOR PLAINTIFF'S TITLE VII AND ADEA CLAIMS FOR DISPARATE TREATMENT

Even were plaintiff to establish that he had exhausted his administrative remedies and that

the Government was his employer, his Title VII and ADEA claims would still fail because he cannot

adduce evidence demonstrating a genuine issue of fact regarding whether he was treated in a

discriminatory manner.

Claims of disparate treatment under Title VII are assessed by way of the three-part burden-

shifting analysis described in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First,

plaintiff has the burden of establishing a *prima facie* case of discrimination.  To establish a *prima*

*facie* case of discrimination under Title VII, plaintiff must make a showing that: 1) he is a member

of a protected class; 2) he was qualified for the position at issue; 3) he suffered an adverse

employment action; and 4) the circumstances of the adverse employment action give rise to an

inference of discrimination.  *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir.

2004). Plaintiff must "proffer[ ] admissible evidence show[ing] circumstances that would be

sufficient to permit a rational finder of fact to infer a discriminatory motive." *Chambers v. TRM*

*Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994).  Courts must "carefully distinguish between

16

evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999), *cert. denied*, 530 U.S. 1242 (2000).

If plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *See Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 142 (2000); *Tx. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The Government's burden is simply to articulate or produce a legitimate, non-discriminatory reason, not to prove the absence of discriminatory motive. *See Reeves*, 530 U.S. at 142; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

If the defendant meets its burden of production, the plaintiff must then prove by a preponderance of the evidence that the legitimate reason proffered by defendant is not the true reason, but rather a pretext for discrimination. *See Reeves*, 530 U.S. at 143; *Burdine*, 450 U.S. at 256; *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000).

A.   **There Is No Evidence Supporting an Inference of Discrimination**

The Government is entitled to summary judgment on plaintiff's claims regarding his termination because he cannot identify any evidence demonstrating circumstances giving rise to an inference of discrimination, as required under the fourth prong of his *prima facie* case. Plaintiff claims that Inspector Clarke and Commander Bou discriminated against him because of his age and his race when requesting that he be removed from all FPS contracts. Am. Compl. ¶ 27. However, plaintiff cannot make out a *prima facie* case because he has no evidence linking the Post Inspection Form or the Request to his race or age. *See, e.g., Stevens v. New York*, No. 09 Civ. 5237 (CM), 2011

17

WL 3055370, at *6 (S.D.N.Y. July 20, 2011); *Teachout v. N.Y.C. Dep't of Educ.*, No. 04 Civ. 945 (GEL), 2006 WL 452022, at *10 (S.D.N.Y. Feb. 22, 2006).

Plaintiff speculates that Inspector Clarke falsified the Post Inspection Form because of an alleged order made by Commander Bou. Pl. Tr. at 223-27. This unsupported statement does not demonstrate that the Post Inspection Form was falsified on the basis of plaintiff's race or age, however. Indeed, plaintiff admits that at least one statement in the Post Inspection Form is true: plaintiff used a personal computer at his post to play a card game while on duty. Pl. Tr. 215-16, 275-76. It is undisputed that, under the Contract, the use of a personal computer while on duty is grounds for a Wackenhut PSO's immediate removal from all federal facilities under the Contract. Both Commander Bou and Inspector Clarke viewed plaintiff's use of a personal computer to pay a game while on duty as an independent basis supporting the Post Inspection Form and the Request. *See* Bou Decl. ¶ 20; Clarke Decl. ¶ 9-10.

Plaintiff also cannot show an inference of discrimination based on his bald speculation that there may have been communications between Wackenhut and Commander Bou concerning an effort "to get rid of the blacks and the seniors." Pl. Tr. at 417. Put simply, "[m]ere speculation on plaintiff's part will not defeat a motion for summary judgment." *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 560 (S.D.N.Y. 2005). Plaintiff admits that he is not aware of any specific communications between Wackenhut and Commander Bou concerning an effort to "get rid of the blacks and the seniors." Pl. Tr. at 418.

Last, plaintiff's conclusory allegations of discrimination are insufficient to support an inference of discrimination. *Cf. Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Accordingly,

18

plaintiff cannot satisfy the *prima facie* elements to sustain a Title VII or ADEA claim against the Government regarding his termination.

**B.    The Government Has Proffered Legitimate, Nondiscriminatory Reasons for Requesting Plaintiff's Removal From Federal Facilities**

Even assuming plaintiff were able to make out a *prima facie* case of discrimination, summary judgment is warranted because the Government has come forward with legitimate, nondiscriminatory reasons for requesting plaintiff's removal from federal facilities, and plaintiff has no evidence to rebut these reasons.  Inspector Clarke and Commander Bou requested that plaintiff be removed from working as a PSO at federal facilities because, when he inspected plaintiff's post, Inspector Clarke observed a personal computer that displayed an active card game. Post Inspection Form, Clarke Decl. Ex. A.  Plaintiff's use of a computer to play a game at his post was an independent basis for Commander Bou's and Inspector Clarke's request for plaintiff's removal from federal facilities.  *See* Post Inspection Form, Bou Decl. Ex. C; Request, Bou Decl. Ex. D; Bou Decl. ¶ 20.

In light of the Government's evidence, plaintiff must present sufficient evidence for a reasonable factfinder to conclude that the proffered legitimate, non-discriminatory reason was pretext for unlawful discrimination.  *See St. Mary's Honor Ctr.*, 509 U.S. at 515.  Plaintiff admits that he used a personal computer to play a card game while on duty.  Pl. Tr. 215-16, 222.  Further, there is no genuine dispute that using personal electronic equipment to play a card game while on duty is cause for the Government to request that Wackenhut remove a PSO from working at federal facilities.  Statement of Work, Bou Decl. Ex. B, at section 16(B); Pl. Tr. at 70.  Although plaintiff disputes that he was sleeping on his post, his use of a computer to play a card game while on duty supported the Government's request that he be removed from FPS contracts.

Plaintiff claims that a white Wackenhut security officer named Amin used a DVD player while on duty and was not disciplined. Pl. Tr. 128. However, plaintiff has no evidence that Inspector Clarke observed Amin using a DVD player while on duty. Plaintiff speculates only that "if Clarke is looking on the [security] tapes [at the federal facilities] he would have saw those infractions also." *Id.* at 446. Plaintiff's speculation that Inspector Clarke observed Amin using a DVD while on duty is insufficient to defeat the Government's summary judgment motion.[4] *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

The Government also anticipates that plaintiff will argue that the fact that five other African-American PSOs were disciplined or terminated during his tenure at Wackenhut demonstrates that the Government's reasons for its actions in his case are pretextual. However, plaintiff has not adduced any evidence to show that these other PSOs were wrongfully treated by the Government, or that the facts of their individual cases suggest a pattern of discrimination that somehow rebuts the Government's showing that it requested that plaintiff be removed from federal facilities for legitimate, non-discriminatory reasons. Thus, plaintiff's evidence is insufficient to show that the legitimate, nondiscriminatory reason for the Request is false, and that the actual reason is discriminatory. *Cf. Jimenez v. City of New York*, 605 F. Supp. 2d 485, 522 (S.D.N.Y. 2009) ("It is not enough for plaintiff to assert, 'I am a Puerto Rican Hispanic over 40 and I did not get the job, and

---

[4] Additionally, the evidence demonstrates that Inspector Clarke's job responsibilities do not include monitoring security tapes. Clarke Decl. ¶ 4. Although Inspector Clarke has access to the security tapes at 201 Varick Street, he does not watch all of the security tapes in their entirety. *Id.* Plaintiff admits that he only observed Inspector Clarke looking at security tapes on a couple of occasions, and that he has no knowledge of whether Clarke reviews completely every security tape recorded at 201 Varick Street. Pl. Tr. 237-38, 440-41. Moreover, Inspector Clarke does not create Post Inspection Reports based on his observations of security tapes at 201 Varick Street, but rather based on his personal inspections. *Id.* ¶ 4.

neither did anyone else like me; I thus must have been passed over because of my race, nationality and/or age.'"); *see also Magadia v. Napolitano*, No. 06 Civ. 14386 (CM), 2009 WL 510739, at *13 (S.D.N.Y. Feb. 26, 2009) (holding that plaintiff failed to present evidence of pretext by arguing that the Government has a reputation for wrongly accusing minority employees of minor infractions because plaintiff presented no evidence that the alleged discriminatory actors discriminated against these minority employees).

In sum, Plaintiff cannot show that the reason for his removal from federal facilities was false because he admits that he engaged in unacceptable conduct as defined in the Contract.  Moreover, plaintiff has no evidence that his removal from federal facilities was discriminatory.  Accordingly, judgment should be entered for the Government with respect to plaintiff's disparate treatment claim.

## IV.   PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS AS A MATTER OF LAW

To sustain a hostile work environment claim pursuant to Title VII or the ADEA, the plaintiff must produce evidence showing that his "workplace is permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted).  Courts consider the totality of the circumstances to determine whether an environment is "hostile" or "abusive," including the following nonexclusive factors:  (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's "work performance."  *Harris*, 510 U.S. at 23.  Plaintiff's evidence, if any, must show

21

that the conduct at issue created an environment that is both objectively and subjectively hostile. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010).

Even where an objectively and subjectively hostile work environment is shown, a plaintiff "will not have a claim under Title VII unless []he can also demonstrate that the hostile work environment was caused by animus towards h[im] as a result of h[is] membership in a protected class." *Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003). "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility or even decency." *Ennis v. Sonitrol Mgmt. Corp.*, No. 02-CV-9070 (TPG), 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006).

Here, plaintiff summarily alleged that the Government "harassed" and "filed frivolous disciplinary charges" against plaintiff, thereby creating a hostile work environment. Am. Compl. ¶ 24. At his deposition, plaintiff identified four circumstances that he claims created a hostile work environment. First, plaintiff claims that Wackenhut relocated a gun range to a facility outside of New York City, which "made it difficult for a lot of blacks to go to." Pl. Tr. 101. Second, plaintiff claims that Wackenhut did not allow PSOs to take lunch breaks or bathroom breaks. *Id.* Third, plaintiff claims that he was not relieved from his shift on time. *Id.* Fourth, plaintiff contends that certain PSOs referred to him as "lazy" and joked with him about sleeping on the job. *Id.* at 102.

None of these circumstances are sufficient to sustain a hostile work environment claim against the Government. As an initial matter, plaintiff has no evidence of the Government's involvement in relocating the firing range, granting lunch and bathroom breaks, relieving PSOs from their posts or referring to plaintiff as "lazy." *See id.* at 103, 114-15, 131-32, 451. Plaintiff has no evidence that the Government was involved in creating this purportedly hostile work environment.

22

Second, as a matter of law, these circumstances do not create a hostile work environment. The alleged events are not sufficiently severe or pervasive and do not evidence a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 23.

Accordingly, this Court should grant judgment in favor of the Government and dismiss plaintiff's hostile work environment claim.

## V.   PLAINTIFF HAS NOT ARTICULATED A RETALIATION CLAIM AGAINST THE GOVERNMENT

Plaintiff cannot satisfy the *prima facie* elements of a retaliation claim against the Government.  To prove a *prima facie* case of retaliation, a plaintiff must show that:  (1) he engaged in protected activity; (2) his employer was aware of that activity; (3) the employer took an adverse action; and (4) there is a causal connection between the protected activity and the adverse action. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).

Here, plaintiff cannot establish a *prima facie* case of retaliation because plaintiff was not engaged in any protected activity of which the Government was aware.  Plaintiff alleges in the Amended Complaint that he "was on the negotiating team of the Local One Security Officer's Union, handling the negotiations of a collective bargaining agreement with Wackenhut[.]" Am. Compl. ¶ 12.  Plaintiff's involvement in the negotiation of a collective bargaining agreement does not suffice to constitute "protected activity" under Title VII or the ADEA.  *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000); *Dill v. Pennsylvania*, 3 F. Supp. 2d 583, 586 (E.D. Pa. 1998) (holding that plaintiff's participation in union negotiations does not constitute "protected activity").

Nor can the EEO complaint plaintiff submitted to the EEOC support his retaliation claim. As discussed *supra* in Section I, the Government has no record of an EEO complaint filed by

23

plaintiff, and never received a copy of the EEO complaint plaintiff filed with the EEOC.  Rock Decl. ¶ 5.  In addition, and perhaps more importantly, plaintiff cannot prove that the EEO complaint he filed on July 6, 2010 caused the alleged adverse action by the Government -- namely, the January 26, 2010 request that plaintiff be removed from federal facilities.

Accordingly, judgment should be entered for the Government on plaintiff's retaliation claim.

## VI.   PLAINTIFF'S STATE LAW AND COMMON LAW CLAIMS AGAINST THE GOVERNMENT WARRANTS DISMISSAL

To the extent the Amended Complaint intends to raise a state law claim against the Government under New York Executive Law § 296, and New York Civil Rights Law § 40-c or a common law breach of contract claim against the Government, these claims should be dismissed. Title VII is "an exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. General Services Admin.*, 425 U.S. 820, 828-29 (1976); *see also Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998); *Randall v. Potter*, 01 Civ. 2097 (THK), 2004 WL 439491, at *4 (S.D.N.Y. Mar. 9, 2004); *Marshall v. Nat'l Assoc. of Letter Carriers*, Nos. 00 Civ. 3167 (LTS), 01 Civ. 3086 (LTS), 2003 WL 223563, at *6 (S.D.N.Y. Feb. 3, 2003). Accordingly, this Court should dismiss any state and common law claims raised by plaintiff against the Government in the complaint.

In any event, plaintiff's breach of contract claim against the Government fails as a matter of law because plaintiff cannot identify a contract he entered into with the Government.  Plaintiff testified at his deposition that the Contract forms the basis of his breach of contract claim.  Pl. Tr. at 357.  However, plaintiff admits that he is not a party to the Contract.  Pl. Tr. 360; Bou Decl. ¶ 6.

Additionally, this court lacks subject matter jurisdiction over plaintiff's breach of contract claim against the Government; the United States Court of Federal Claims has jurisdiction over claims against the United States founded upon any express or implied contract with the United States.  28 U.S.C. § 1491.

## <u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that the Court grant its motion for summary judgment.

Dated:  New York, New York
        February 1, 2012


                                PREET BHARARA
                                United States Attorney for the
                                Southern District of New York
                                Attorney for Janet Napolitano, Secretary of
                                  the Department of Homeland Security

                        By:      */s/ Alicia M. Simmons*
                                ALICIA M. SIMMONS
                                Assistant United States Attorney
                                Tel. No.: (212) 637-2697
                                Fax No.: (212) 637-2686