UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JEFFREY HOUSE,

                Plaintiff,

          v.                                    10 Civ. 9476 (CM) (FM)

WACKENHUT SERVICES, INC., LT.
RENATO VELATI, OFFICER CARBANARO,
JANET NAPOLITANO (SECRETARY OF
HOMELAND SECURITY),

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW OF DEFENDANT JANET NAPOLITANO, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Tel. No. (212) 637-2697
Fax No. (212) 637-2686

ALICIA M. SIMMONS
Assistant United States Attorney
    - Of Counsel -

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT…………………………………………………………………1

ARGUMENT…………………………………………………………………………………….. 2

I. PLAINTIFF HAS ABANDONED HIS HOSTILE WORK ENVIRONMENT, RETALIATION AND STATE LAW CLAIMS AGAINST THE GOVERNMENT………………………………………………………………………...……. 2

II. PLAINTIFF DID NOT SATISFY THE EXHAUSTION REQUIREMENT UNDER TITLE VII OR THE ADEA………………...…………………….…………...……….2

III. THE GOVERNMENT AND WACKENHUT ARE NOT JOINT EMPLOYERS……… 6

IV. PLAINTIFF'S DISPARATE TREATMENT CLAIMS FAIL UNDER THE MIXED-MOTIVES ANALYSIS……………………………………………………7

CONCLUSION…………………………………………………………………………………..10

i

# **TABLE OF AUTHORITIES**

**PAGE**

*Bickerstaff v. Vassar Coll.*,
   196 F.3d 435 (2d Cir. 1999).................................................................................................8

*During v. City Univ. of N.Y.*,
   01 Civ. 9584 (BSJ), 2005 WL 2276875 (S.D.N.Y. Sept. 19, 2005)..................................10

*Economou v. Caldera*,
   No. 99 Civ. 12117 (AJP), 2000 WL 1844773 (S.D.N.Y. Dec. 18, 2000) ...........................6

*Gorzynski v. JetBlue Airways Corp.*,
   596 F.3d 93 (2d Cir. 2010)...................................................................................................8

*Gross v. FBL Fin. Serv., Inc.*,
   129 S.Ct. 2343 (2009).........................................................................................................8

*Ibraheen v. Wackenhut Serv., Inc.*,
   09 Civ. 5335 (SLT), 2012 WL 947728 (E.D.N.Y. Mar. 20, 2012) .....................................6

*Johnson v. Peake*,
   634 F. Supp. 2d 27 (D.D.C. 2009) ..................................................................................3, 4

*Lynk v. Henderson*,
   98 Civ. 2086  2000 WL 178859 (S.D.N.Y. Feb. 15, 2000) ................................................6

*Marache v. Akzo Nobel Coatings, Inc.*,
   08 Civ. 11049 (SHS), 2010 WL 3731124 (S.D.N.Y. Sept. 7, 2010)..................................2

*McCarthy v. New York City Technical Coll.*,
   202 F.3d 161 (2d Cir. 2000).................................................................................................9

*McDonnell-Douglas Corp. v. Green*,
   411 U.S. 792 (1973)........................................................................................................1, 8

*Miller v. Int'l Tel. & Tel. Co.*,
   755 F.2d 20 (2d Cir. 1985)...................................................................................................5

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989)...................................................................................................1, 7, 8

*S.E.C. v. Kelly*,
   765 F. Supp. 2d 301 (S.D.N.Y. 2011).................................................................................2

*Schnabel v. Abramson*,
    232 F.3d 83 (2d Cir. 2000)..................................................................................................9

*Sista v. CDC Ixis N. Amer., Inc.*,
    445 F.3d 161 (2d Cir. 2006)................................................................................................8

*Smith v. U.S. Postal Serv.*,
    766 F.2d 205 (6th Cir. 1985) .............................................................................................5

*Stratton v. Dep't for the Aging for N.Y.*,
    132 F.3d 869 (2d Cir. 1997)................................................................................................8

## STATUTES AND REGULATIONS

29 C.F.R. § 1614.105(a)(2)................................................................................................5

The Government, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this reply memorandum in further support of its motion for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

In his opposition, plaintiff abandons all of his claims against the Government except for his Title VII race discrimination claim and his ADEA claim, both of which lack merit. As set forth in the Government's opening brief, plaintiff failed to satisfy two threshold requirements of any Title VII or ADEA claim. First, plaintiff admits that he failed to exhaust the available administrative remedies, and cannot satisfy the exhaustion requirement even if the deadline for filing an administrative charge were tolled to the latest possible date. Second, plaintiff is not an "employee" of the Government under Title VII or the ADEA. Plaintiff has no evidence proving that the Government and Wackenhut are joint employers, and even admits that Wackenhut, and not the Government, terminated his employment.

Even if plaintiff were able to satisfy these two threshold requirements – which he cannot – plaintiff's age and race discrimination claims lack merit under the *McDonnell Douglass* pretext analysis set forth in the Government's moving brief or the *Price Waterhouse* mixed-motives analysis raised in plaintiff's opposition brief. The Supreme Court has made clear that a plaintiff cannot articulate an age discrimination claim under the mixed-motives analysis. Moreover, plaintiff has not set forth any evidence showing that race discrimination played any part in the Government's request to remove plaintiff from federal facilities.

For these reasons, and those set forth in the Government's initial brief, this Court should grant the Government's motion for summary judgment.

---

[1] This brief uses the defined terms set forth in the Memorandum of Law of Defendant Janet Napolitano, Secretary of the Department of Homeland Security, in Support of Motion for Summary Judgment ("Gov't Br.").

**ARGUMENT**

I. **PLAINTIFF HAS ABANDONED HIS HOSTILE WORK ENVIRONMENT, RETALIATION AND STATE LAW CLAIMS AGAINST THE GOVERNMENT**

This Court should dismiss plaintiff's hostile work environment, retaliation and state law claims against the Government as abandoned. Where a plaintiff fails to address arguments supporting the entry of judgment for a particular claim, the plaintiff is deemed to have abandoned that claim. *See S.E.C. v. Kelly*, 765 F. Supp. 2d 301, 323 (S.D.N.Y. 2011); *Marache v. Akzo Nobel Coatings, Inc.*, 08 Civ. 11049 (SHS), 2010 WL 3731124, at *2 (S.D.N.Y. Sept. 7, 2010).

Here, the Government set forth grounds upon which plaintiff's hostile work environment, retaliation and state law claims should be dismissed. *See* Gov't Br. at 21-25. Plaintiff does not challenge the Government's analysis. Accordingly, these claims should be dismissed.

II. **PLAINTIFF DID NOT SATISFY THE EXHAUSTION REQUIREMENT UNDER TITLE VII OR THE ADEA**

As set forth in the Government's moving papers, plaintiff's Title VII and ADEA claims against the Government should be dismissed for failure to exhaust administrative remedies. *See* Gov't Br. at 9-12. Plaintiff argues that his complaint to Agent Crowe satisfied the exhaustion requirement. *See* Memorandum of Law in Opposition to Government's Motion for Summary Judgment ("Pl. Br.") at 2-3. This argument fails, however, because Agent Crowe is not an EEO counselor and plaintiff's complaint to him did not reference age or race discrimination.

Plaintiff argues that he exhausted the available administrative remedies because he "took all logical and appropriate steps to initiate contact with an EEO counselor" when he complained to FPS Agent Crowe about his termination. *See id.* at 2. As plaintiff himself concedes, however, "the requirement of 'initiating contact with a Counselor' is satisfied when an employee initiates contact with an agency official *logically connected with the EEO process* and *exhibits an intent*

2

*to begin the EEO process.*" *Johnson v. Peake*, 634 F. Supp. 2d 27, 31 (D.D.C. 2009) (emphasis added); *see also* Pl. Br. at 1. Plaintiff failed to meet this standard in two respects.

First, when he complained to Agent Crowe, plaintiff did not express any intent to begin the EEO process. Plaintiff admits that he never complained to Agent Crowe of age or race discrimination. *Compare* Government's Statement of Facts Pursuant to Local Civil Rule 56.1 ("Gov't Rule 56.1 Statement") at ¶ 10 *with* Plaintiff's Civil Local Rule 56.1 Statement ("Pl. Rule 56.1 Statement") at ¶ 10 ("Plaintiff agrees that he never specifically complained about race or age."); *see also* Pl. Tr. 453. Plaintiff told Agent Crowe that that he had been terminated because of his union involvement, and because Inspector Clarke had written a false Post Inspection Report at the direction of Commander Bou. *See* Gov't Br. at 7-8. Even after Agent Crowe forwarded plaintiff's complaint to ICE's Office of Professional Responsibility, plaintiff did not complain of race or age discrimination to ICE Agent Barry, the case officer assigned to investigate plaintiff's complaint, or to ICE Agent Joseph Quigley when they interviewed plaintiff. *See* ROI No. 002, Simmons Decl. Ex. J; Affidavit dated May 21, 2010, Simmons Decl. Ex. K. Agents Crowe, Barry and Quigley could not have advised plaintiff that "he was making his complaint in the wrong place and to the wrong person," *see* Pl. Br. at 2-3, because plaintiff never informed them that his complaint was premised on race and age discrimination.

Plaintiff attempts to distance himself from his admission that his complaint to these agents did not reference age or race discrimination by highlighting a statement he made to Agents Barry and Quigley describing himself as "the senior guy." *Id.* at 3-4. Plaintiff's interpretation of this statement is taken out of context. The record reveals that plaintiff made this statement to the agents when he was speculating whether he had been removed from federal facilities because of a conversation he had with other Wackenhut employees concerning the

3

return of another security guard who "had problem[s] with [Inspector] Clarke . . . ." *See* ROI No. 002, Simmons Decl. Ex. J, at US_00297.  Plaintiff told Agents Barry and Quigley that, of those participating in that conversation, he was the "senior guy of the group." *Id.*  Plaintiff made no reference to his age (or his race) when making this statement.  *Id.*  Indeed, as far as the agents knew, plaintiff may have been referring to his 15-year tenure as a PSO when describing himself as "the senior guy." *Id.* at US_00293; Pl. Br. at 3.

Second, plaintiff has not presented evidence showing that Agents Crowe, Barry or Quigley held themselves out as EEO counselors or were in any way logically connected with the EEO process.  As explained in the Government's opening brief, instead of presenting his complaint to ICE's EEO counselor services in Washington, D.C., pursuant to the instructions found on the agency's website, plaintiff relayed his complaint to Agent Crowe, then a FPS Supervisory Special Agent in New York City.  *See* Gov't Br. at 11-12; Rock Decl. ¶ 3.  Agent Crowe forwarded plaintiff's complaint (which did not allege race or age discrimination) to ICE's Office of Professional Responsibility.  *See* Gov't Br. at 7-8.  Plaintiff has not adduced any evidence showing that a FPS Supervisory Special Agent or ICE's Office of Professional Responsibility is logically connected to ICE's EEO.

Plaintiff relies, in error, on *Johnson* to argue that Agents Crowe, Barry and Quigley held themselves out as EEO counselors.  In *Johnson*, the district court held that the plaintiff had exhausted his administrative remedies by informing two EEO staff members of his discrimination complaint, as opposed to informing an EEO counselor.  *See Johnson*, 634 F. Supp. 2d at 30.  Here, however, plaintiff did not contact or speak with anyone in ICE's EEO to report his complaint about his termination.  Rock Decl. ¶¶ 5-6.

Plaintiff's argument that the exhaustion requirement should be "waived" or "tolled" is also unavailing.  Even if, after speaking with Agents Crowe, Barry and Quigley, plaintiff "later learned" that "the true motivation for his termination was race and age," *see* Pl. Br. at 4, plaintiff's obligation to exhaust the available administrative remedies is not excused.  *Cf. Smith v. U.S. Postal Serv.*, 766 F.2d 205, 207 (6th Cir. 1985) (employer's alleged efforts to conceal discriminatory acts does not excuse plaintiff from exhaustion requirement).  Plaintiff's alleged ignorance is also insufficient to toll the deadline by which he was required to contact an agency EEO counselor or file an EEO complaint with the agency.[2]  *See Miller v. Int'l Tel. & Tel. Co.*, 755 F.2d 20, 24 (2d Cir. 1985) (administrative remedies deadlines not tolled "pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by his employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum.").  Plaintiff presents no evidence showing that he was misled or prevented from filing an administrative charge.

Even assuming plaintiff can show equitable grounds for tolling, the latest date by which plaintiff could have become aware of the alleged race and age discrimination is July 6, 2010, the date on which he filed a charge of discrimination with the EEOC concerning his termination.  *See* Charge of Discrimination, Simmons Decl. Ex. L.  However, plaintiff filed that charge of discrimination against only Wackenhut, and took no steps on or after that date to contact an agency EEO counselor or submit an EEO complaint to the agency alleging that he was terminated on account of his race and age.  *See id.*; Rock Decl. ¶¶ 5-8; *see also Smith*, 766 F.2d at 207 (equitable tolling would not aid plaintiff because he did not exhaust administrative

---

[2] Nor could plaintiff seek tolling pursuant to 29 C.F.R. § 1614.105(a)(2), which, as pertinent here, extends the forty-five day limit "when the individual shows . . . that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred."  Here, the adverse action "occurred" when Wackenhut terminated plaintiff's employment in January of 2010.  *See* Letter dated Jan. 27, 2010, Simmons Decl. Ex. E.

remedies after discovering he potentially had a claim against postal service). Moreover, because plaintiff was represented by counsel around the time that he filed the EEO complaint against Wackenhut, *see* Pl. Tr. 395-96, plaintiff should have been aware of the administrative requirements for filing a Title VII and ADEA claim against the Government. *See Ibraheen v. Wackenhut Serv., Inc.*, 09 Civ. 5335 (SLT), 2012 WL 947728, at *3 (E.D.N.Y. Mar. 20, 2012) ("[R]etaining an attorney gave Plaintiff constructive notice of the requirements of filing a Title VII suit against the federal government."); *Lynk v. Henderson*, 98 Civ. 2086 (MGC), 2000 WL 178859, *7 (S.D.N.Y. Feb. 15, 2000) ("A lack of diligence on the part of plaintiff's attorney does not justify equitable tolling of the 45-day time limit"); *Economou v. Caldera*, No. 99 Civ. 12117 (AJP), 2000 WL 1844773, *19-20 (S.D.N.Y. Dec. 18, 2000) ("Equitable relief is particularly inappropriate where the plaintiff was represented by counsel during the relevant period."), *aff'd*, 286 F.3d 144 (2d Cir. 2002).

## III. THE GOVERNMENT AND WACKENHUT ARE NOT JOINT EMPLOYERS

Plaintiff argues, unsuccessfully, that Wackenhut and the Government are "joint employers," Pl. Br. at 5-8, but he disregards both the four-factor test applied by the Second Circuit and the fact that the Second Circuit has recognized a joint-employer relationship only in limited contexts. As explained in the Government's moving brief, all four of the factors in the Second Circuit's "joint employer" test – (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control – weigh in favor of finding that the Government and Wackenhut are not joint employers. *See* Gov't Br. at 14-16. Although plaintiff notes that, under the Contract, the Government has the authority to observe PSO training, prepare post orders for PSOs, direct PSOs to testify for the Government in judicial proceedings and request urine drug screening from a PSO it reasonably

believes is using illegal substances, *see* Pl. Br. at 6-7, none of these circumstances suffice under the Second Circuit's test to transform the Government's contractual relationship with Wackenhut into a joint-employer relationship.

Plaintiff's argument that "the federal government has the right to request the immediate removal of any Wackenhut security officer," *see* Pl. Br. at 7, is misleading.  Plaintiff conflates the Government's contractual authority to remove Wackenhut PSOs *from federal facilities covered under the Contract* with Wackenhut's authority to terminate the employment of its PSOs.  As explained in the Government's opening brief, Section 16 of the Contract only empowers the Government to remove a PSO from working at federal facilities covered under the Contract.  *See* Gov't Br. at 15.  The Government does not have the authority under the Contract to terminate a PSO's employment relationship with Wackenhut.  *See id.*; Bou Decl. ¶ 15.  Indeed, plaintiff admits that "[o]nly Wackenhut, not the federal government, has the power to fire an employee."  *See* Memorandum of Law in Opposition to Wackenhut's Motion for Summary Judgment at 23.

## IV. PLAINTIFF'S DISPARATE TREATMENT CLAIMS FAIL UNDER THE MIXED-MOTIVES ANALYSIS

Plaintiff fails to rebut the Government's argument that plaintiff has not adduced evidence to establish a *prima facie* case of age or race discrimination.  *See* Gov't Br. at 17-19.  Plaintiff admits that he engaged in the unauthorized use of a personal computer while on duty, and that his use of the computer "is listed as one of the grounds for removal . . . ."  Pl. Br. at 10-11.  However, plaintiff argues that the Government removed plaintiff from federal facilities, in part, because of his age and race, and that, even if the Government had a legitimate, non-discriminatory reason for its actions, evidence of a mixed motive would be sufficient to defeat summary judgment under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  Pl. Br. at 8-10.

As a threshold matter, however, the *Price Waterhouse* mixed-motives analysis does not apply to ADEA claims. The United States Supreme Court held in *Gross v. FBL Fin. Serv., Inc.* that the ADEA does not "authorize[] a mixed-motives age discrimination claim." *See* 129 S. Ct. 2343, 2350 (2009); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). In so holding, the Supreme Court made clear that, "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross*, 129 S.Ct. at 2349.

In addition, plaintiff lacks evidence sufficient to sustain a Title VII claim against the Government under the *Price Waterhouse* mixed-motives analysis. Cases alleging a dual motivation for an employer's adverse action follow the mixed-motives analysis outlined in *Price Waterhouse*, as opposed to the burden-shifting analysis described in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 445-46 (2d Cir. 1999). Under the mixed-motives analysis, plaintiff must prove by a preponderance of the evidence that "a prohibited discriminatory factor played a 'motivating part' in a challenged employment decision . . . ." *Sista v. CDC Ixis N. Amer., Inc.*, 445 F.3d 161, 173 (2d Cir. 2006). Regardless of whether the claim applies the *Price Waterhouse* mixed-motives analysis or the *McDonnell Douglass* burden-shifting analysis, the ultimate issue "is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an impermissible reason, *i.e.*, a discriminatory reason." *Stratton v. Dep't for the Aging for N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997).

To support his mixed-motives race discrimination claim, plaintiff offers three arguments, none of which demonstrates that discrimination played a motivating part in the Government's decision to remove plaintiff from federal facilities.

First, plaintiff argues that Inspector Clarke falsely reported on the Post Inspection Form that plaintiff was sleeping while on duty.[3]  Pl. Br. at 10.  Even accepting as true plaintiff's testimony that he was not sleeping at his post on December 4, 2009, plaintiff cannot prove that race motivated Inspector Clarke to report otherwise on the Post Inspection Form,[4] much less that it motivated Inspector Clarke's and Commander Bou's joint decision to issue the Request.  *See* Gov't Br. at 6-7, 18; *see also Schnabel v. Abramson*, 232 F.3d 83, 90-91 (2d Cir. 2000) (affirming entry of summary judgment for employer despite factual dispute concerning whether employer's decision to terminate plaintiff was pretext).  Plaintiff attempts to establish a "pattern of older black officers being terminated" by noting that another African-American PSO, Daoud Ibraheem, was also charged with sleeping on the post.  Pl. Br. at 12-13.  However, plaintiff presents no evidence showing that Inspector Clarke or Commander Bou were involved with this charge, *see* Gov't Br. at 20; Pl. Tr. at 158-59 (plaintiff unaware whether the Government reported to Wackenhut that Ibraheem was sleeping on duty); Pl. Br. Ex. M at ¶ 18 (alleging that "Jose Alvarez and Gary Sandrowsky falsely and maliciously accused plaintiff of sleeping at his post"), or that the charge against Ibraheem was false, *see* Pl. Tr. 148-49 (plaintiff was not present at Ibraheem's post on the date Ibraheem was accused of sleeping on duty).  Any similarity between plaintiff's allegation in this case and Ibraheem's allegation in an unrelated case is insufficient for a reasonable factfinder to infer that discrimination motivated Inspector Clarke and Commander Bou to issue the Request.  *See McCarthy v. New York City Technical Coll.*, 202

---

[3]  Plaintiff also argues that "there is no evidence that a request for removal would have been made without the allegations of habitual sleeping." Pl. Br. at 10-11.  To the contrary, Commander Bou testified that plaintiff's use of a computer was an independent basis for the Request.  *See* Bou Decl. ¶ 20.  Plaintiff offers no evidence to rebut this testimony.

[4]  Plaintiff notes that the Government did not "recommend[] the[] dismissal" of two white PSOs "sleeping on post," *see* Pl. Br. at 13, but offers no evidence that Inspector Clarke, or anyone at FPS, observed their conduct.  *See* Gov't Br. at 20 n.4.

F.3d 161, 165 (2d Cir. 2000) (evidence that employer terminated two employees over age 40 insufficient to infer discriminatory motive).

Second, plaintiff argues that FPS "denied the existence" of the surveillance video that "confirms his innocence." *See* Pl. Br. at 12-13, 17. To support this assertion, plaintiff relies on a statement made by Agent Crowe concerning his inability to locate the surveillance tape of Kings Street booth number one on December 4, 2009. *See* Pl. Br. at 13, Ex. C. Plaintiff fails to acknowledge, however, that FPS gave a copy of the surveillance tape to Agent Barry, to whom Agent Crowe referred plaintiff's complaint. *See* ROI No. 005, attached as Ex. A to the Supplemental Declaration of Alicia M. Simmons dated Apr. 2, 2012, at US_00308. Moreover, and contrary to plaintiff's inaccurate description of the video footage, the surveillance video does not show plaintiff's activities at King Street booth number one, and thus cannot "confirm[] his innocence." *See id.* at US_00309; Pl. Br. Ex. H.

Third, plaintiff's opposition brief refers to a single stray remark allegedly made by Inspector Clarke the year before plaintiff's termination. Pl. Br. at 12. However, as plaintiff acknowledges, the Second Circuit has held that a stray comment alone is usually insufficient to prove a claim of employment discrimination. *See id.* at 15; *see also During v. City Univ. of N.Y.*, 01 Civ. 9584 (BSJ), 2005 WL 2276875, at *12 (S.D.N.Y. Sept. 19, 2005). In any event, Inspector Clarke's alleged comment that "this place is getting like an old age home" bears no relevance to plaintiff's race discrimination claim, the only claim plaintiff can raise against the Government under a mixed-motives analysis.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in the Government's moving papers, the Government respectfully requests that the Court grant its motion for summary judgment.

Dated: New York, New York
April 2, 2012

                    PREET BHARARA
                    United States Attorney for the
                    Southern District of New York
                    Attorney for Janet Napolitano, Secretary of
                      the Department of Homeland Security

By:    */s/ Alicia M. Simmons*
        ALICIA M. SIMMONS
        Assistant United States Attorney
        Tel. No.: (212) 637-2697
        Fax No.: (212) 637-2686